(89 South. 605)

**LAKEY v. STATE.** (7 Div. 193.)

(Supreme Court of Alabama. June 9, 1921.)

**1. Homicide ⬅123 — Officers going on porch without intent to search without warrant not trespassers.**

Officers who went on the porch of accused's house in a peaceable manner and with lawful purpose, and without intent to search his barn for intoxicating liquors without a warrant, if he objected, were not trespassers, and court properly refused to so charge in a homicide case.

**2. Homicide ⬅199—In determining degree of guilt, jury may consider whether officer entering house without search warrant was a trespasser.**

Where some officers went on front porch of accused's house, and another officer went to the rear of the house and entered there at the wife's invitation to search for intoxicating liquors, he was not a trespasser; but if he commanded accused's wife to open the door, and thereupon entered and began a search, he was a trespasser, and accused, in a prosecution for homicide of one of the officers while searching the barn, was entitled to have the jury consider that fact in fixing the degree of his guilt, as giving color to the provocation accused may have had at his barn.

**3. Homicide ⬅187—Provocation not admissible on issue of self-defense.**

Where officers went to defendant's house in the nighttime to search for intoxicating liquors, and one of the officers entered the rear door, where defendant's wife was in her nightgown, evidence that such officer entered without invitation was not admissible on the question of self-defense, though admissible to show provocation, to be considered by the jury in fixing the degree of his guilt in subsequently killing one of the officers while searching his barn.

**4. Witnesses ⬅270(2) — Cross-examination of defendant's witness held improper.**

In a prosecution for killing of officer while searching barn for intoxicating liquors, it was error to permit the state, on cross-examination of a witness who testified that on the night of the killing, before the officers went to defendant's house, they stopped at witness' house and

drank whisky and became drunk, to ask whether or not witness' husband pleaded guilty to a violation of the prohibition law; purpose of such cross-examination evidently being to contradict testimony of witness that there was no whisky in her husband's car, the husband not testifying.

**5. Witnesses ⬅337(6)—Error to require defendant to testify whether he was under suspended sentence.**

In a prosecution for killing an officer while searching defendant's barn without a warrant to discover intoxicating liquors, it was error to allow the state to ask of defendant whether he was at the time of the hearing under a suspended sentence in the federal court for distilling liquor, his answer being "Yes," since Code 1907, § 4009, must be construed in pari materia with section 4008; distilling of liquor not involving moral turpitude.

**6. Witnesses ⬅376—Witness should not speak of candor of own testimony.**

Where sheriff testified as witness for state, and did not deny that he had said he would like to have a rope around defendant's neck, it was error, on redirect examination, to overrule an objection to question: "You speak of not feeling as good toward Mr. L. (defendant). Your feeling is not such as would cause you to bias your testimony?"—since such question was an invasion of the province of the jury to determine to what degree the feeling of the witness had affected his testimony.

**7. Criminal law ⬅855(6)—Officers should not enter jury room.**

The presence of a bailiff or deputy sheriff in a jury room for from 10 to 30 minutes should not have been permitted, especially where accused was on trial for killing a member of the sheriff's official family, and the sheriff was an important witness for the prosecution.

Appeal from Circuit Court, Clay County; W. L. Longshore, Judge.

Northern Lakey was indicted for murder in the first degree for killing J. D. Ramsey by shooting him with a pistol, was convicted of murder in the second degree, and appeals. Reversed and remanded.

Riddle & Riddle, of Talladega, for appellant.

Witnesses must testify to facts, and not to mental status or uncommunicated motives or purpose. 149 Ala. 623, 43 South. 818, 11 L. R. A. (N. S.) 1748, 124 Am. St. Rep. 93. The fact that Gordon had pleaded guilty was not admissible. 21 Cyc. 924; 1 May 333. Court was in error in its charge on the effective evidence. Section 5363, Code 1907. The searchers were trespassers and the charges requested should have been given. Section 5, Const. 1901; 115 Ala. 1, 22 South. 585; 93 Ala. 45, 9 South. 303, 30 Am. St. Rep. 28; 136 Ala. 32, 34 South. 205; 189 Ala. 579, 66 South. 600; 13 Ala. App. 181, 69 South. 485; 196 Ala. 586, 72 South. 20.

⬅For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

The conduct of the bailiff was improper. 17 Ala. App. 506, 86 South. 179; 13 S. E. 552.

Harwell G. Davis, Atty. Gen., and Lackey, Pruitt & Glass, of Ashland, for the State.

There was no error in the evidence. 62 Ala. 154; 182 Ala. 76, 62 South. 241. The fact that the sheriff of the county was there when the raiding was done was permissible. 41 Ala. 405; 62 Ala. 224; 78 Ala. 12; 88 Ala. 154, 7 South. 273. Counsel discuss other assignments of error, but without further citation of authority.

SAYRE, J. Defendant was convicted of murder in the second degree and sentenced to the penitentiary for 40 years. Many exceptions were reserved at the trial. We find it necessary to notice a few of them only.

After midnight of July 2–3, 1920, deceased, Ramsey, a deputy sheriff, with Hamlin, the sheriff, and Stanford and Allen, federal prohibition enforcement officers, went to the home of defendant, aroused him from his bed, and announced their purpose to search his barn for liquor. These officers had no warrant for their search, but the evidence was in conflict whether defendant demanded to know whether they had a warrant; testimony for defendant tending to show that he asked whether they had a warrant and that he was assured by one of the federal officers that they needed none. It was not denied, however, that defendant went across the road with the officers—three of them—and unlocked the door of the barn they wished to search. It was disputed whether any liquor was found. Defendant stood at the door of the barn. After the search had gone on for some time, many shots were fired and Officer Ramsey received a wound, of which he shortly died. The evidence was in conflict as to who started the shooting and who was immediately in fault in bringing it on.

[1] Defendant contends that the officers—acting in concert, of course—were trespassers in going upon the front porch of his house at the time and under the circumstances stated, and holds that the court on his request should have so instructed the jury. But if the officers went upon the front porch of defendant's house in a peaceable manner, and with lawful purpose—that is, not intending to search his barn without a warrant, if he objected—it cannot be said that they were trespassers.

[2, 3] While the other officers were on the front porch, Stanford went to the rear of the house, entered there, and began a search in the cook room, where defendant's wife was in her nightgown. If this officer entered upon the wife's invitation, as he swore he did, it cannot be said that he was a trespasser. But if he commanded defendant's wife to open the door, and thereupon entered and began a search under the conditions stated by the wife, he was a trespasser, and defendant was entitled to have the jury consider that fact in fixing the degree of his guilt, in the event his plea of self-defense did not prevail—as giving color and character to the provocation defendant may have had at the barn, though he may not on that account have been excused on the ground of self-defense. The evidence as to those things was in conflict, and there was, for that reason, no error in the court's refusal of the charges in which the defendant requested the court to instruct the jury that in making these entries at the front and rear of defendant's house the officers were trespassers.

[4] Mrs. Gordon was sworn as a witness for the defendant. The effect of her testimony was that on the night of the killing, shortly before midnight, the officers to whom we have referred were at her house, several miles away from the place of defendant's residence, where they conducted a search and found whisky. She testified that the officers drank of the whisky they found, and there was evidence tending to show that they were under that influence when later at defendant's place. Mrs. Gordon, on cross-examination, was required to answer a question whether her husband had pleaded guilty, the question as indefinite as this. The answer was that he did. This was error. It could neither be shown in this way that the husband of witness was guilty of some violation of the prohibition law, nor could the witness' testimony to the effect that there was on that occasion no whisky in her husband's car be so contradicted, and we may assume that the prosecution, in asking this question, had one or both of these purposes in view, since such may have been the effect, though not legitimate, of the fact thus developed. We may add that Gordon, the husband, did not testify.

[5] Likewise, it was error to allow the state to ask of defendant, when testifying as a witness, whether he was at the time of the killing under a suspended sentence in the federal court for distilling liquor; his answer being "Yes." Defendant duly excepted to the ruling which required him to answer this question. We presume the purpose was to discredit the witness. Section 4009 of the Code of 1907 provides that—

"A witness may be examined touching his conviction for crime, and his answers may be contradicted by other evidence."

But, as the Court of Appeals observed in Abrams v. State, 17 Ala. App. 379, 84 South. 862, the foregoing section must be construed in pari materia with section 4008, providing:

"No objection must be allowed to the competency of a witness because of his conviction for any crime, except perjury or subornation of perjury; but if he has been convicted of a

crime involving moral turpitude, the objection goes to his credibility."

We are not advised that distilling liquor involves moral turpitude. Pippin v. State, 197 Ala. 615, 73 South. 340; Swope v. State, 4 Ala. App. 87, 58 South. 809. The evidence thus required of the defendant was calculated very seriously to prejudice him in the eyes of the jury, and should not have been admitted.

[6] Sheriff Hamlin testified as a witness for the state. He would not deny that, on the occasion when he was removing defendant from the jail in Talladega to Clay county for trial, he had said that he would like to have a rope around his d——d neck, and upon redirect examination the court overruled defendant's objection to the following question propounded by the state:

"You spoke of not feeling as good toward Mr. Lakey. Your feeling isn't such as would cause you to bias your testimony?"

This was error. The witness could not properly be allowed to speak of the candor of his own testimony. That was one of the questions to be passed upon by the jury. It was the province of the jury to determine to what degree the feeling of the witness had affected his testimony, and the answer permitted to go to the jury was a clear invasion of that province. L. & N. v. Landers, 135 Ala. 504, 33 South. 482.

[7] Some other exceptions would ordinarily deserve special notice, but they can hardly recur in the form now presented, and, for that reason, adjudication as to them may be pretermitted. We will say, however, that the presence of the bailiff or deputy sheriff in the jury room for a period of time variously estimated at from 10 to 30 minutes should not be allowed to recur. His presence there was not upon any necessary occasion, and was questionable at best; and this we say though the evidence taken upon the motion for a new trial tended to show that there was no communication between the deputy and the jury on the subject of the pending case. It is possible there was no such communication; but, even so, his presence in the jury room, after the jury had retired for consideration of the case, was questionable in a high degree, in view of the fact that defendant was on trial for killing a member of the sheriff's official family, and the sheriff was a most important witness for the prosecution. 2 Thomp. on Trials (2d Ed.) § 2556, p. 1836.

For the errors pointed out, the judgment of conviction in this case must be reversed.

Reversed and remanded.

ANDERSON, C. J., and MILLER, J., concur.

GARDNER, J., concurs in the result only.