279 So.2d 576

**Donald Rayford TUCKER, alias**

v.

**STATE.**

1 Div. 376.

Court of Criminal Appeals of Alabama.

June 26, 1973.

No brief for appellant.

William J. Baxley, Atty. Gen., and William T. Musgrove, Jr., Special Asst. Atty. Gen., for the State.

TYSON, Judge.

The Grand Jury of Monroe County, Alabama, indicted the appellant for burglary in the second degree and grand larceny. The Jury's verdict found him guilty on both counts, and judgment set sentence at ten years imprisonment in the penitentiary.

Mr. William Dailey, a patrolman for the Monroeville Police Department, testified that on February 21, 1972, at approximately 10:45 p. m., he went to the "old Hybart place," a dwelling house located near the Monroe County Hospital. He stated that he had checked the house every night that week because of a report that the house had been broken into the previous week. He further stated that when he checked the house the night before, the doors had been closed and locked. Upon approaching the house, he observed a pickup truck with a U-Haul trailer parked in front of the house, and several articles of furniture on

the porch and leaning against the trailer. The double doors of the house were propped open, but nobody was visible. After checking inside the house Patrolman Dailey started to leave when he discovered appellant coming around the side of the house. He asked appellant what he was doing, and appellant replied that he and Billy Burleson had bought the furniture being loaded from a Negro man, named Roosevelt Williams. At this time Burleson was discovered in front of the house. He had a handwritten bill of sale, which he showed to Patrolman Dailey. Appellant and Burleson told Patrolman Dailey that when the police officers drove up, Roosevelt Williams shouted, "[R]un, there comes the law." No trace was ever found of this Negro man. Bloodhounds were used in the search, but all that was found were two pairs of gloves and a flashlight in the woods near the house.

Mrs. Marion Hybart testified that she owned the house the furniture was taken from, but was presently residing in Mobile. From photographs, she was able to identify the furniture taken from the trailer as belonging to her, and she further stated that she had not sold this to anyone.

Sergeant James C. Butler, a state investigator, testified that he and Chief Deputy Linwood Sager had talked with appellant in the county jail. On voir dire examination outside the presence of the Jury, Sergeant Butler stated that appellant was given the *Miranda* warning, and that he signed a waiver of rights. The appellant then took the stand to refute the voluntariness of the inculpatory statements allegedly made by him. Appellant admitted being warned of his rights and remembered "signing something," but stated that he did not sign the waiver of rights form he was shown at trial. Appellant further stated that he "begged for a lawyer," but didn't get one. He then admitted the signature was his, but that other information had been added to the document after his signature was obtained.

Deputy Linwood Sager also took the stand on voir dire and substantiated Sergeant Butler's testimony. He also stated that at no time did appellant ask for a lawyer. The trial court then ruled that the statement was voluntary and admissible.

In the presence of the Jury Sergeant Butler was allowed to testify as follows:

"A He told us him and another man named Burleson came down together from Demopolis and they met another man out here at the cafe and ate lunch and later on that afternoon, they came out to Mrs. Hybart's residence and they made up a bill of sale there and brought it back over to his house and he signed the bill of sale at his house and they made up the story about the Negro being there and selling it to them in case anybody came up and he told us if we would get Colonel Walter Allen down from Montgomery that he would tell us all about it; otherwise, he wouldn't feel safe while traveling on the highways of Alabama."

Deputy Linwood Sager then testified that after appellant had been given his rights he told the officers he would take them back out to the house and show them something he had hidden. They went out to the house and, after searching through the brush, appellant retrieved a .22 pistol and handed it to the officers. He told them he was put out at the lane going up to the house and was told "if anybody else came in that road for him to come running up behind them—to get behind them when they pulled up to the house and tell them to hold it and they would do the rest." The pistol was then admitted into evidence.

The appellant took the stand and stated that the furniture had been bought from one Roosevelt Williams. He denied ownership or possession of the pistol or any knowledge of the place where it was found; he claimed he never left the jail.

Billy G. Burleson's testimony tended to corroborate that of appellant.

In rebuttal, State Trooper Randolph Lambert stated that he had gone with Deputy Sager and appellant out to the old Hybart place and that appellant found the pistol after looking around several trees.

I

■ There was no error in allowing the inculpatory statements of appellant into evidence. Both the "pre-*Miranda* and *Miranda*" predicates were inquired into on the voir dire examination of Sergeant Butler outside the presence of the Jury. Jackson v. Denno, 378 U.S. 368, 84 S.Ct. 1774, 12 L.Ed.2d 908. The trial judge's conclusion that the statements were voluntary, and therefore admissible is adequately supported by the facts, and any discrepancies in the testimony were for the Jury to weigh. Bills v. State, 49 Ala.App. 726, 275 So.2d 706, and cases cited therein.

II

■ In support of appellant's motion for new trial, which was overruled, there is attached the following affidavit:

"AFFIDAVIT OF PATRICIA L. KENDRICK

"Before me, the undersigned authority in and for said County and State personally appeared Patricia L. Kendrick, who is known to me, and who, being first duly sworn, deposes and says as follows:

"My name is Patricia L. Kendrick. I am twenty-four years of age. I was present in the Monroe County Courtroom during the trial of Donald Rayford Tucker on Monday, May 29, 1972. I was sitting near the front of the courtroom after the jury had retired to make up its verdict. Before the jury returned to the courtroom the bailiff entered the courtroom, approached the table where the State's Counsel was seated and remarked 'The verdict is guilty.' The bailiff was asked what he had said and he repeated 'They have found him guilty.'

Shortly thereafter the Court announced that the jury was ready to report.

"Patricia L. Kendrick

"Sworn to and subscribed before me this 30th day of May, 1972.

"Sandra C. Brantley
NOTARY PUBLIC"

The oath that should be administered to the bailiff who keeps the jury, if they should choose to retire, is found in Gregg v. State, 43 Ala.App. 538, 195 So.2d 803, cert. den. 280 Ala. 714, 195 So.2d 807, and reads in part:

"' . . . That you will return with them into court when a verdict has been reached, or you are ordered by the court so to do, and *that you will not communicate to any person the state of their deliberations*. So help you God.'—Jones, Alabama Practice & Forms, § 18000." [Emphasis added.]

If the affidavit in question showed a separation of the Jury, there would be little doubt as to what course to follow.

In Lynn v. State, 250 Ala. 384, 34 So.2d 602, the court stated:

"The prevailing rule in this jurisdiction controlling the question is that 'a separation of the jury, after the trial has been entered upon, and before verdict, creates a cause for reversible error in favor of the defendant, unless the state affirmatively shows that the defendant was not thereby injured . . . .' " [Authorities cited.]

"Such a separation however, does not of itself invoke the absolute right to have a mistrial declared or for a new trial, but prejudice must result therefrom. The right is only prima facie and, when a separation is shown, the onus is on the prosecution to affirmatively establish that the separating juror or jurors conversed with no one affecting the defendant's guilt and that no other influences were brought to bear on the jury or any

of its members which may have biased their deliberations. Arnett v. State, 225 Ala. 8, 141 So. 699 . . . . ."

In Oliver v. State, 232 Ala. 5, 166 So. 615, we find:

". . . The test of vitiating influence upon a jury authorizing a new trial is not whether it did influence the jury to act without the evidence, but whether it might have unlawfully influenced the jury in the verdict returned, as to its nature, character, or degree, or the amount and extent of the punishment fixed by the jury within the statute. The authorities on this subject are collected in Roan v. State, 225 Ala. 428, 435, 143 So. 454; Leith v. State, 206 Ala. 439, 443, 444, 90 So. 687; Lakey v. State, 206 Ala. 180, 182, 89 So. 605."

The affidavit in support of appellant's motion for new trial is, in our opinion, insufficient to show a separation of the Jury. No other evidence was presented in support of the alleged separation, and there is nothing whatsoever in the record to show that the bailiff actually communicated with the jurors. From the affidavit alone a reasonable assumption can be made that the bailiff merely overheard the result or was told the result of their deliberations and related this to the District Attorney just before the Jury was returned to the box to announce its verdict. While this certainly is not a proper act on the part of the bailiff, for lack of any evidence showing communications or discussions by the bailiff with the jurors that might have a tendency to influence the Jury in its deliberation, we find no reversible error here. Supreme Court Rule 45, Title 7, Appendix, Code of Alabama 1940.

## III

At the conclusion of the court's oral charge, the following objection was made by defense counsel:

"THE COURT: What says the defendant?

"MR. OWENS: Your Honor, I would like to except to one portion of the Court's oral charge which in defining the elements of grand larceny the Court stated that the element of carrying away would be met if—could be met by moving as much as one inch the property—as long as the intent was there to deprive them of its use.

"THE COURT: I'll give you an exception. Ladies and gentlemen, please retire and make up your verdict."

The law is that "a very slight asportation will be deemed sufficient" to support a conviction of larceny. May v. State, 30 Ala.App. 390, 6 So.2d 521; Molton v. State, 105 Ala. 18, 16 So. 795, 53 Am.St.Rep. 97.

In Johnson v. State, 41 Ala.App. 351, 132 So.2d 485, the court held:

"To meet the burden of proving that the property was stolen, it is necessary only that the state offer sufficient legal evidence to show a severance of the possession of the owner and an actual possession of the wrongdoer. It is immaterial how short the distance moved, or the length of time he exercised dominion over it. It may constitute larceny if there was a severance of the possession of the owner and an actual possession and removal by the wrongdoer . . ."

The least removing of the thing taken from the place where it was before, with intent to steal it, is a sufficient asportation to constitute larceny even though the property is not quite carried off. 50 Am. Jur.2d, Larceny, Sec. 16, p. 167.

We therefore are of the opinion that the trial judge correctly instructed the jury as to the law on this subject.

We further find no error in the refusal of appellant's requested written charges 1, 2, 4 and 10, as they were cov-

ered either in the court's oral charge, or in appellant's other requested written charges that were given. Title 7, Section 273, Code of Alabama 1940.

We have carefully examined the record, as required by Title 15, Section 389, Code of Alabama 1940, and find same to be free from error. The judgment is therefore due to be and the same is hereby

Affirmed.

ALMON, HARRIS, and DeCARLO, JJ., concur.

CATES, P. J., not sitting.