293 So.2d 317

**Billy G. BURLESON**

v.

**STATE.**

**1 Div. 424.**

Court of Criminal Appeals of Alabama.

March 19, 1974.

Rehearing Denied April 9, 1974.

Windell C. Owens, Monroeville, for appellant.

HARRIS, Judge.

Appellant was put to trial upon a two-count indictment charging (1) burglary in the second degree and (2) grand larceny. He was represented by retained counsel and at arraignment pleaded not guilty. Trial counsel represents him on appeal.

On the night of February 21, 1972, the home of Mrs. Marion Hybart in Monroeville, Alabama, was broken into and numerous items of furniture, some of antique vintage, were found on the front porch and in a U-Haul trailer hitched to a 1970 Chevrolet pick-up truck parked in the yard.

In June of 1971, Mrs. Virginia Hybart Taylor of Mobile, Alabama, came to Monroeville and got her mother from a local hospital and carried her directly to the Taylor home where Mrs. Hybart was living at the time of the burglary. Mrs. Taylor locked up the Hybart home before they departed for Mobile. According to Mrs. Taylor the furniture set out in the indictment was worth at least fifteen thousand dollars. This furniture consisted of antiques.

Mrs. Taylor further testified that they checked on the home and furniture about once each month and found nothing missing. A week or two before the burglary, Mrs. Hybart and her eighteen-year-old grandson visited her home and found the furniture to be just like she left it in 1971. They found some panes broken and employed a local carpenter to replace them and send the bill to her in Mobile. She told the local police about the broken panes in her house and requested them to check on her home. During a routine check, an officer found a glass door broken and he reported this to a local attorney representing the Hybart estate who requested the officer to keep a close check on the home and this officer checked the house every night. He got out of his car and walked around the house and checked all the doors. This same officer checked the house on the night of February 20, 1972, and found everything in order. All doors were closed and locked and nothing was opened.

The officer who made the check and inspection on the night of February 20, along with another officer, returned to the home on the night of February 21 and found the double doors to the house wide open. Then he saw a pick-up truck with a U-Haul trailer parked on the south side of the house and both were loaded with furniture.

They went inside the house and found the furniture remaining in the house to be in different stages of dismantlement as though someone was in the process of moving it. The officers were inside the house about ten minutes and they did not see anyone. They went out and searched the truck and trailer and while they were making this search, one Jabbo Tucker walked from around the house and while the officers were questioning him as to what he was doing at this house, they heard a voice calling from the opposite side of the house. Tucker had a pair of gloves and a flashlight in his hands as he approached the officers. One of the offi-

cers went to investigate and returned with appellant.

The officers asked appellant what he was doing at this house and he replied that he had purchased the furniture from Roosevelt Williams, a colored man, and while they were loading it, the officers drove up and Williams said, "Run, there is the law", and Williams ran away. The officers searched the area for the colored man and did not find him. They got bloodhounds from Atmore State Prison Farm but the hounds did not pick up the scent of any other person. The hounds made a winding trail and came back to the starting point. While searching the surrounding woods one of the officers found another pair of gloves and a flashlight exactly like those in Tucker's possession.

Appellant showed the officers what purported to be a bill of sale to certain items of furniture which appellant claims to have prepared by the dome light of his truck at the Hybart home on the night of February 21, 1972. It was not a bill of sale but was more in the form of a sales slip containing a list of twenty items of furniture, glassware and some mixed merchandise, totaling $1,000.00. This sales slip was signed by appellant on a line after the printed words, "Buyer's signature". Immediately below this line was another line on which purported to be the signature of Roosevelt Williams just after the word, "Salesman".

The Sheriff of Monroe County made an inventory of the furniture and goods that were on the pick-up truck and in the U-Haul trailer before they were put back in the Hybart home. The list is as follows:

"Six dining room chairs; one piano stool; one side chair with arm rests; one small rocker; one Victorian chair with arm rests; one straight chair with no arm rests; one rocking chair; one stuffed Victorian highback; one highback rocker; one Victorian highback with arms; one coffee table; one center table; one what-not; one table base; two oval looking glasses; one dressor (sic) or secretary with glasses; one drop-leaf table; two large pictures with brass frames; one box of assorted objects; one desk; one desk with mirror; one china cabinet; one marble top and two love seats."

As each piece of furniture was taken from the U-Haul trailer and the pick-up truck to be put back in the house, a state trooper took photographs of each. Some of these photographs were introduced in evidence without objection and the others were admitted in evidence over appellant's objection.

The sheriff further testified that all the items replaced in the Hybart home were old, all antiques.

Another deputy sheriff testified that he had served in that capacity for eight years and was a life-long resident of Monroe County. He said he was familiar with all the Negro families in the County and that he had never heard of a Roosevelt Williams as described by appellant; that he canvasses the County in an effort to locate this man but his efforts were fruitless, no one had ever heard of a Roosevelt Williams weighing two hundred fifty or two hundred and seventy-five pounds.

Appellant testified in his case. He said he lived in Marion County about ten miles from Hamilton and that he bought and sold salvage and antiques and was an auctioneer by trade. He testified that he had a fixed place of business in Hamilton, Alabama, but the place did not have his name on it, but he had been in this type business for ten years. He said he left Hamilton on February 21, 1972, at seven, eight, or nine o'clock that morning to go on a buying trip to Mobile. He got to Demopolis between eleven and twelve o'clock where he ran into Jabbo Tucker and one Stanley Cole; that Cole was a state trooper and he and Tucker wanted appellant to take them to Monroeville; that he was driving a 1971 model red pick-up truck being a Chevrolet and was pulling a U-Haul trailer; that

when they got to Monroeville, he drove to a house where Tucker said he lived. He found two bolts had worked loose on the rear bumper of his truck and they unhitched the trailer and drove to a service station to get gasoline. After leaving the service station, he drove to a downtown parking lot where he saw a Negro weighing about two hundred and fifty pounds and dressed in overalls; that Tucker told him he had bought some antiques from this man. Appellant asked the Negro if he had any antiques for sale and he got an affirmative reply. The time was between 2 and 3 o'clock p. m. The Negro told appellant that he was cutting pulpwood and could not meet him until nine o'clock that night and to meet him at the parking lot of a local hospital. The Negro further told appellant that the electricity was not on at the house where the antiques were housed and for them to bring flashlights. After this conversation appellant, Tucker, and Cole went to a cafe for lunch. After lunch they went to Tucker's house and waited until nine o'clock, While waiting for the appointed hour to meet the Negro, Tucker left the house and bought two flashlights, two pairs of gloves and two bolts for the truck bumper.

At nine o'clock appellant and Tucker left Cole at the house and drove to the parking lot at the hospital and picked up the Negro who directed them to the Hybart home. According to appellant the double doors to the Hybart home were wide open and there was a lot of furniture stacked on the front porch. Appellant went inside the house and with flashlights selected what he wanted to buy and what the Negro was willing to sell. He made out what he called a bill of sale and it was signed by appellant and the Negro, Roosevelt Williams. Appellant claimed he paid Williams $1,000.00 cash in the form of fifty 20 dollar-bills. During the negotiations leading up to the execution of the sales slip, Williams allegedly told appellant that he had worked for the white people who owned the house and furniture and that both were dead and the Negro inherited the home and contents.

Appellant testified that they started loading the furniture he had purchased and had been at the house an hour and a half to two hours when the officers drove up; that they were on the porch when the officers drove up the driveway and that the Negro said, "That is the law—you had better get out of here—that's the police or sheriff or something"; that the Negro started to run off the porch and appellant grabbed for him but he got away and appellant followed him around the corner of the house and was calling his name but the Negro disappeared in the bushes.

Tucker was separately indicted, tried, and convicted for this same offense. This Court affirmed Tucker's appeal. Tucker v. State, 50 Ala.App. 405, 279 So.2d 576. That case is here referred to for a different version of the facts—particularly Tucker's confession.

Appellant urges a reversal on three grounds, (1) the Court erred in allowing certain photographs in evidence over his (appellant's) objection, (2) there was no substantial evidence to prove the charges of burglary and grand larceny, and (3) that the Court in its oral charge placed an undue and excessive burden upon the appellant by shifting the burden to him to "explain to the reasonable satisfaction of the jury" his possession of stolen goods.

■ There was no error in the admission of State's Exhibits Nos. 14 through 20 being photographs of the furniture that was removed from the pick-up truck and the U-Haul trailer and carried back into the Hybart home. Appellant admitted this was the furniture he had taken from this home and porch. These photographs were merely cumulative evidence as photographs (State's Exhibits Nos. 1 through 12) of the same furniture were admitted in evidence without objection.

In prosecution for burglary of an uninhabited house the admission of photographs which showed disarrangement of furniture and effects was not error. Gipson v. State, 262 Ala. 229, 78 So.2d 293.

The rule is ably stated by Mr. Justice Brown in McKee v. State, 253 Ala. 235, 237–238, 44 So.2d 781, 783:

" * * * (T)he art of photography is generally relied on for depicting the resemblance of persons, objects, things and places and when verified by evidence, extrinsic of the photographs, going to show that they correctly depict the thing or object *at the time they were taken,* photographs are admissible in evidence in a criminal prosecution, if they tend to shed light on, strengthen or illustrate the truth of other testimony offered by the prosecution. * * * "

Fact that evidentiary character of photographs is cumulative does not render them inadmissible. King v. State, 43 Ala.App. 628, 198 So.2d 308.

We are unwilling to hold that the evidence in this case is insufficient to establish the essential elements of the crime for which appellant stands convicted. The *corpus delicti* is a fact, proof of which may be shown by circumstantial evidence, and if there is a reasonable inference to prove its existence, the court should submit to the jury for consideration the question of the sufficiency and the weight of the evidence tending to support that inference. Hines v. State, 260 Ala. 668, 72 So.2d 296.

It is the law of this state that the unexplained possession of property does not raise the presumption that the property was stolen. There must be other evidence of the *corpus delicti.* When this has been shown, and the stolen property, soon after the offense, is found in possession of a person *who is unable to give a satisfactory explanation of his possession,* then the jury is authorized to infer his guilt. Orr v. State, 107 Ala. 35, 18 So. 142.

The burden of proof is never on an accused in a criminal prosecution. In some of our larceny cases dealing with possession of recently stolen goods, we have held that the *onus* or *burden of proof* was on the defendant to explain such possession to the reasonable satisfaction of the jury. All such cases have been deemed to be unsound. Haynes v. State, 45 Ala.App. 31, 222 So.2d 183; Reed v. State, 47 Ala. App. 617, 259 So.2d 304.

In Re Buckles v. State of Alabama (Ex Parte State of Alabama ex rel. Attorney General), 291 Ala. 359, 280 So.2d 823, the Supreme Court held that the oral charge of the court which had the effect of placing upon the defendant the burden of explaining his possession of *recently* stolen goods was erroneous.

But we are not here dealing with a case of *recently* stolen goods. *Appellant was caught red handed in the act of taking furniture from the Hybart home* and loading it in a U-Haul trailer and a pick-up truck parked in the yard of the Hybart home. *There was no time element intervening between the taking and the apprehension.* As a matter of fact appellant was still in the act of loading the furniture when the officers arrived on the scene. The double doors to the Hybart home were still wide open and some of the furniture which had been removed from the house was still on the porch. The doors to the U-Haul trailer were likewise open wide and there was still room in the U-Haul trailer and the pick-up truck for more furniture.

Appellant's only defense was that *he was the owner of the furniture.* He had what he claimed to be a bill of sale to the furniture. It is axiomatic that one cannot be guilty of larceny in taking his own property. His claim of ownership made and presented a jury question and the jury simply rejected his claim.

The oral charge of the court on the law with reference to recently stolen goods *was abstract to the facts in this case.*

We find no error in the record injuriously affecting the substantial rights of appellant and the case is due to be affirmed.

Affirmed.

All the Judges concur.

