314 So.2d 114

**Joe Harvest WEBB**

v.

**STATE.**

**5 Div. 241.**

Court of Criminal Appeals of Alabama.

April 1, 1975.

Rehearing Denied May 6, 1975.

Guy F. Gunter, III, Opelika, for appellant.

William J. Baxley, Atty. Gen., and Donald G. Valeska, II, Asst. Atty. Gen., for the State.

HARRIS, Judge.

Appellant was convicted of grand larceny and sentenced to ten (10) years imprisonment in the penitentiary. Prior to arraignment, he was ascertained to be indigent and counsel was appointed to represent him throughout the trial proceedings below and was appointed to represent him on appeal. At arraignment he pleaded not guilty and not guilty by reason of insanity. Trial counsel requested the court to appoint a respectable physician to conduct an examination to determine his mental condition. This request was granted and a member of the Comprehensive Mental Health Center in Opelika was appointed to make this determination. A certificate was filed with the court stating:

"As per your request an examination was made of this man by me on Tuesday, February 19, (1974). Mr. Webb was oriented as to time, place and person. He could remember events with no difficulty. In my talking with him, I could not see any evidence of a psychotic disorder. I believe that he should be held responsible for his actions."

When the case was called for trial, appellant withdrew his special plea of not guilty by reason of insanity and went to trial on the not guilty plea.

Hudson-Thompson, Inc., a corporation, operated a grocery store in Auburn, Alabama, on December 14, 1973, under the trade name of "Super Foods". On the morning of that date, appellant entered the store ostensibly to buy groceries. At this particular time, business was slack and there was only one check-out cash register then in operation. On duty at the time appellant came in were the co-managers of the store and a woman cashier.

When appellant entered the store he got a grocery cart and pushed it back to the meat counter. He got a large shopping bag and began filling the bag with meat items. This attracted the manager of the non-foods department and he went to the manager of the grocery department and reported what he had observed. They both started to the back and met appellant pushing the cart toward the check-out counter. The manager saw only a lunch meat item in the basket of the cart but underneath the basket on some type of platform he saw a large shopping bag and saw meat items sticking out of the bag. The manager asked him what he had in the sack. He did not answer the question but pushed the cart to the side of an aisle and said he had left his wallet and walked out of the store. He returned in two or three minutes and a short while later he started pushing the cart through the check-out counter. Both managers of the store walked toward the front of the store and watched appellant put only the lunch meat item from the cart basket onto the counter. The cashier rang up the purchase and gave appellant some change. The large bag was still on the platform under the basket as appellant pushed the cart out the front door of the store. When he got completely out of the store and on the sidewalk, the manager asked him if he had paid for the items in the bag and he said yes, that he paid for them with a medicare card. He showed the manager the medicare card with his address in the Ridge Crest Apartments in Auburn. The manager knew the store did not accept medicare cards in payment of groceries and asked appellant to go back in the store while he checked the bag to see if there was a cashier's tape or receipt in the bag.

They returned to the meat counter and the manager searched the bag and did not find a receipt showing that the cashier had checked out the items in the bag. The manager counted the items in the bag and found six steaks, five packages of pork chops, three packages of weiners, four packs of bologna and some chicken. The

value of these items totaled the sum of $39.49. The manager then told appellant that he was going to call the Auburn Police Department and have him arrested. Appellant remained in the store until the officers arrived and he was taken to jail.

At the trial both managers of the store, and the cashier, positively identified appellant as the man who only paid for one lunch meat item and who rolled the shopping cart out of the store carrying the bag of unpaid items of meat with him.

Appellant testified that he did not leave the store to go for his wallet and did not roll the grocery cart out of the store. He denied that he showed the manager a medicare card and did not say he paid for his purchases with such a card. He also denied showing the manager a medicare card. He testified he paid for all items he bought that morning by giving the cashier two twenty-dollar bills. He said he had not done anything wrong and could not understand why he was arrested.

 Larceny is generally defined as the felonious taking and carrying away of personal property of another with intent on the part of the taker to convert to his own use or to deprive the owner thereof. Armstrong v. State, 49 Ala.App. 396, 272 So.2d 603.

In prosecutions for grand larceny very slight asportation will be deemed sufficient. May v. State, 30 Ala.App. 390, 6 So.2d 521; Arthur v. State, 38 Ala.App. 490, 93 So.2d 793; Lawson v. State, 38 Ala.App. 322, 82 So.2d 812.

There was no motion to exclude the state's evidence; no motion for a new trial; no request for the affirmative charge; no exceptions reserved to the oral charge; no request for any written charges, and no adverse rulings on the admission of the evidence. In this posture of the record nothing is presented to this court to review. Eady v. State, 48 Ala. App. 726, 267 So.2d 516; Grant v. State,

46 Ala.App. 232, 239 So.2d 903; Robinson v. State, 46 Ala.App. 684, 248 So.2d 583.

We have carefully searched the record for errors injuriously affecting the substantial rights of appellant and have found none.

The judgment of conviction is affirmed.

Affirmed.

All the Judges concur.