TYSON, Judge.
From an incident occurring shortly after 6:00 o’clock on the evening of July 2, 1978, near the Western Super Market at Mountain Brook Village in Jefferson County, two indictments arose against the appellant, Jerome Wilkins. The first charged the appellant with grand larceny of a two-door Javelin automobile of the value of $2000.00, the property of Patricia Quinn Duke. The second count in this indictment charged the appellant with the buying, receiving, or concealing the said Javelin automobile. A second indictment was returned, charging the appellant with kidnapping Patricia Quinn Duke. At the request and consent of the appellant, the two cases were consolidated for trial. At the close of the evidence, the State dismissed and struck the buying, receiving, or concealing count, which was Count Two in Indictment No. 7801949, and the case went to the jury on the larceny and kidnapping charges.
The jury found the appellant guilty of “grand larceny,” as charged in the indictment, and fixed the value of the stolen property at $2000.00. The jury found the appellant “not guilty of kidnapping,” as charged in the indictment. The trial judge deferred sentencing, then set sentence at ten years imprisonment in the penitentiary and directed the appellant be given credit for “all jail time.”
*354 Richard W. Duke of 4319 Cliff Road in Birmingham testified that, accompanied by his wife, Patricia Duke, he drove to the Western Super Market in Mountain Brook Village, arriving there at approximately 6:00 o’clock on the evening of July 2, 1978. He stated that his automobile was a 1968 two-door Javelin, and as this was a very hot day, he left the motor running and the air conditioner on, after he pulled into the parking lot in front of the store. Hé stated that he and his wife were on their way to a cookout and he needed to pick up some meat.
As Duke was walking toward the entrance of the store, he passed the appellant, Jerome Wilkins, whom he positively identified in court. He stated that, though he had never seen the appellant before, the appellant nodded at him and patted his own pants pockets. He stated that Wilkins hesitated again, and that he, Duke, then went in the store and was there less than five minutes when he heard someone exclaim something about someone trying to drive off in a car. He stated that he ran out of the store and noticed that his car had been moved about one-half the length of the store, and that his wife was standing outside the vehicle and three men were holding the appellant, Jerome Wilkins. Mountain Brook police officers came up shortly thereafter and arrested the appellant.
Patricia Quinn Duke related that she rode with her husband, Richard Duke, to the front of the Western Super Market in Mountain Brook Village on the evening of July 2, 1978, arriving there at approximately 6:00 p. m. Because it was real hot, her husband left the motor and the air conditioner on while he went inside the store to get a chicken for a cookout. Just before her husband entered the store, she noticed a black male, the appellant, Jerome Wilkins, come around the corner of the store. She saw him look toward the car, then hesitate, and as her husband walked by him, Wilkins nodded at him and patted his own pants’ pockets. As her husband entered the store, she saw Wilkins start running toward the car, and she endeavored to lean over to the driver’s side to lock the door. She stated that the appellant grabbed the door on the driver’s side and jerked it open, that this broke a fingernail that had been caught in the upholstery as she was trying to lock the door. She stated that she attempted to push the appellant back; but he pushed her aside, turned the key in the ignition, and put the car into reverse. She felt the car move back, then forward, and she opened the door on the passenger’s side and rolled out.
Mrs. Duke stated that she fell on her left side and bruised her knee and arm, but that she was screaming and yelling for help. She stated that as she looked up she saw her purse lying on the floor, and she grabbed it and attempted to swing at the appellant, Jerome Wilkins, who leaped over her. She stated that two men pursued Wilkins and grabbed him, that in a few minutes her husband came out of the store, and the Mountain Brook police drove up and arrested Wilkins.
James L. Johnson, a manufacturer’s agent, who resided at 4414 Briar Green Circle in Mountain Brook, stated that, shortly after 6:00 o’clock on the evening of July 2, 1978, he and his wife came out of the Western Super Market at Mountain Brook Village. Mr. Johnson indicated he had just placed groceries in his car when he saw the appellant, a black male, whom he positively identified in court, running toward a two-door automobile, and saw a lady inside the car reach over and attempt to lock the door on the driver’s side. He observed the appellant pull the door open and grasp the female by the throat, then push her back inside the car. As the car started backing up, Johnson ran to the side of the car and “slammed his hands” against the door and held the door closed. As he did so, the appellant “killed the engine and tried to get out.” Mr. Johnson stated that, when he would not let him out, he pushed the female, jumped out on the passenger’s side, and ran. Johnson ran along by the side of the appellant, as did another man, and they grabbed him, threw him to the ground, and held him until Mountain Brook police officers arrived.
*355 L. M. Horne operated a service station at the corner of Montevallo Road and Cahaba Road “right in front of the Western Super Market” on July 2, 1978. Horne indicated he had just come out of the Western Super Market after buying some groceries, and as he turned he heard a woman scream and saw a colored boy trying to get in the car. The car began to back up, then went forward. As it did, a white man “slammed” against the side of the car, and the black man stopped the car, pushed the woman, and jumped out the passenger’s side. Horne stated that, as the black man, whom he positively identified in court as the appellant, began to run, he and another man grabbed him and wrestled him to the ground. Horne stated they held the man until the Mountain Brook police drove up and arrested him.
Carl Joseph Lotz of 4208 Old Leeds Lane stated he was eighteen years old and attended John Carroll School. Lotz indicated that he was employed at the Western Super Market “sacking groceries” during the summer of 1978. He stated that shortly after 6:00 o’clock on the evening of July 2, 1978, he had seen a black man drive up in a Mustang automobile and get out. Lotz stated that he had put some groceries in a car nearby, and as he headed back to the front of the store, he heard a woman scream. As he turned around he saw the appellant, whom he positively identified in court, back the car, in which a woman was riding, then start forward. As he did, a white man ran to the side of the car, and another man started to the car also. Lotz indicated that the black man pushed the woman out of his way and jumped out the passenger’s side and ran. Lotz indicated that just as the appellant began running he tackled him in the parking lot and two other men came up, grabbed the appellant, and held him until the Mountain Brook police officers arrived. Lotz made a positive in-court identification of the appellant as the man he saw getting in the Javelin car, then jumping out.
William C. Waites, a Mountain Brook police officer, testified that he was on duty, working the 3:00 to 11:00 p. m. shift on July 2, 1978. He stated that between 6:15 and 6:30 that evening he drove to the parking lot in front of the Western Super Market and there arrested the appellant, Jerome Wilkins, who was being held by three men.
Mrs. Duke was then recalled and testified that the automobile belonged to her and her husband and was worth over $2000.00.
At the close of the State’s case, the appellant’s attorney made a motion to exclude and for a directed verdict. At this time the State then struck the buying, receiving, and concealing count, and the case went to the jury without the appellant testifying or offering any evidence whatever on the larceny and kidnapping charges.
I
Appellant’s counsel argues that the State failed to prove a felonious intent to deprive the owner of his property, hence, the State failed to make out a prima facie case.
In McMurphy v. State, Ala., 358 So.2d 1069 (1978) Mr. Chief Justice Torbert defined larceny in the following manner:
“ ‘Larceny is the felonious taking and carrying away of the personal property of another with the intent on the part of the taker to convert it to his own use, or to deprive the owner thereof. Higgs v. State, 113 Ala. 36, 21 So. 353; Moulden v. State, 47 Ala.App. 573, 258 So.2d 915; Armstrong v. State, 49 Ala.App. 396, 272 So.2d 603.’ Jones v. State, 56 Ala.App. 444, 447, 322 So.2d 735, 737 (1975).”
In Tucker v. State, 50 Ala.App. 405, 279 So.2d 576 (1973), we find the following discussion:
“The law is that ‘a very slight asportation will be deemed sufficient’ to support a conviction of larceny. May v. State, 30 Ala.App. 390, 6 So.2d 521; Molton v. State, 105 Ala. 18, 16 So. 795, 53 Am.St. Rep. 97.
“In Johnson v. State, 41 Ala.App. 351, 132 So.2d 485, the court held:
“ ‘To meet the burden of proving that the property was stolen, it is necessary only that the state offer sufficient legal evi *356 dence to show a severance of the possession of the owner and an actual possession of the wrongdoer. It is immaterial how short the distance moved, or the length of time he exercised dominion over it. It may constitute larceny if there was a severance of the possession of the owner and an actual possession and removal by the wrongdoer . . . ’
“The least removing of the thing taken from the place where it was before, with intent to steal it is a sufficient asportation to constitute larceny even though the property is not quite carried off. 50 Am. Jur.2d, Larceny, Sec. 16, p. 167.”
Bonner v. State, 57 Ala.App. 462, 329 So.2d 152 (1976); and Mauldin v. State, Ala.Cr.App., 3 Div. 2, July 17,1979.
In Lawson v. State, 38 Ala.App. 322, 82 So.2d 812 (1955), Mr. Justice Harwood, then Harwood, P. J., noted:
“Possession is not limited to actual manual control upon or about the person. If under one’s power and dominion the thing is possessed. . . . ”
See also, Webb v. State, 55 Ala.App. 195, 314 So.2d 114, cert. denied, 294 Ala. 774, 314 So.2d 116, and cases cited.
In the instant cause, not only did Mrs. Duke describe the appellant, Jerome Wilkins, getting into the vehicle, turning the ignition key, putting the car in reverse, and backing it, but also noted that the car began going forward before she could open the door on the passenger’s side and roll out. See Klemmer v. State, 51 Ala.App. 383, 286 So.2d 58, cert. denied, 291 Ala. 786, 286 So.2d 62 (1973), cert. denied, 416 U.S. 957, 94 S.Ct. 1972, 40 L.Ed.2d 308 (1974); and Cherry v. State, 43 Ala.App. 318, 189 So.2d 786 (1966).
Mr. Johnson also noted the appellant getting into the vehicle, backing it up, and starting forward before he ran to the driver’s side and “slammed against it and beat on it to hold the driver inside.” At this point, Wilkins, the appellant, cut the ignition, pushed at Mrs. Duke, and leaped over her to get out, and began to run. He was then wrestled to the ground by Johnson, L. M. Horne, the service station operator, and the grocery store attendant, Carl Joseph Lotz. Horne and Lotz also described seeing the appellant attempt to back the car away from the curb, then go forward with Mrs. Duke inside, before jumping out and being grasped by the two of them and Mr. Johnson.
As noted by the authorities herein, there' must be a severance of the possession of the owner and an actual possession by the wrongdoer. Here, Wilkins, the appellant, obtained momentary complete and exclusive control of the Javelin automobile. This possession was interrupted by the quick arrival of the three men in the parking lot. The length of time of the appellant’s possession is unimportant. See authorities herein cited.
It is clear that the State properly presented a prima facie case, and, therefore, the trial judge properly overruled the motion to exclude and motion for a directed verdict, which were made by appellant’s counsel.
We have carefully examined the oral charge of the trial court, together with the written requested charges, which were given, and find no error.
We have carefully examined this record and find no error therein. The judgment is therefore
AFFIRMED.
All the Judges concur.