321 So.2d 272

**Theodore AUSTIN, Jr.**

v.

**STATE.**

**5 Div. 309.**

Court of Criminal Appeals of Alabama.

Oct. 21, 1975.

**308**

Whitesell, Gordon & Gallion, Montgomery, for appellant.

William J. Baxley, Atty. Gen., and James S. Ward, Asst. Atty. Gen., for the State.

CLARK, Supernumerary Circuit Judge.

Appellant was convicted of robbery and sentenced to imprisonment in the penitentiary for fifty years.

According to the testimony of Mr. L. A. Kelly, appellant entered Mr. Kelly's store at Titus, in Elmore County, about 1:00 P. M. October 26, 1973. Appellant was accompanied by another man. There were about six customers in the store at the time. Appellant and his companion left the store and returned about 2:30 P.M. They asked for some bologna and went back to the meat case; Mr. Kelly also went back. Mr. Kelly testified that as he passed appellant appellant "hit me in the head with the hammer. Well, then, he picked up a—an old iron crate—a milk crate, and after I had hit the floor, and—he began to beat me in the face with that, and I had cuts through here, (indicating)." Mr. Kelly further testified that more than two hundred eighty-two dollars were taken from the store at the time. He said defendant-appellant was a stranger to him, but he positively identified him as the defendant on trial. He said that of the money taken from the store "they took a hundred and fifty dollars out of the safe"; "the wrapper was still around it." He said the other money was in the cash drawer, which amounted to more than one hundred thirty-two dollars. He testified the money belonged to him. He was taken that afternoon to a physician in Wetumpka, who testified that he had a skull fracture and a brain injury. He was then sent to Montgomery for further medical treatment.

Elmore County Sheriff Sidney Thrash and State Trooper Investigator Jonah Pemberton, Jr., were informed of the incident soon after it occurred. Both went to Kelly's store. Sheriff Thrash arrived

there first. He found a milk crate lying in the middle of the floor near the meat box, a hammer handle and a hammer head on the floor about six or eight feet apart. He found a stick on the ice box. Between 8:00 and 8:30 A.M. the following Monday, October 29, Sheriff Thrash and Officer Pemberton arrested appellant at Perkins Gin in Wetumpka. After each was examined at length on voir dire (on direct and cross), out of the presence of the jury, each testified that defendant confessed the crime in detail about seven and one-half hours after his arrest. Trooper Pemberton testified defendant said that he and Robert Mitchell robbed Kelly's place, that they went in the store twice the afternoon of the robbery, that the first time there were too many people in there and they left. He testified appellant further said that he and ·Robert returned to the store, that Robert gave appellant a hammer and that Robert had a stick. He said Robert told appellant to hit the old man with the hammer. According to Officer Pemberton, appellant said he told Mr. Kelly he wanted some bologna, and as Mr. Kelly walked by him, he went up behind Mr. Kelly and hit him over the head with a hammer; that the hammer broke and he then picked up a milk crate and hit the man when he was trying to get up; he took some bills out of the cash register that Robert had left and picked up some bills that Robert had dropped. The witness further testified that the appellant stated that he and Robert then went into the Crenshaw community, where they divided the money, each getting one hundred and thirty-two dollars.

Sheriff Thrash testified as to his version of the confession by appellant. He testified that appellant stated that he and Robert Mitchell went to the store on the morning of October 26, came back to Wetumpka and played some pool and while playing pool decided to go to Mr. Kelly's store and rob him. When they left the car, he put a hammer in his pocket and Robert put a stick in his pocket. According to Sheriff Thrash, appellant said he asked Mr. Kelly for some bologna and as Mr. Kelly walked ahead of him, appellant hit him beside the head with a hammer, the hammer head flew off and Mr. Kelly hit the floor; appellant threw the hammer handle down, grabbed a milk case and hit Mr. Kelly in the face with it, but Mr. Kelly "came on up anyhow, and shoved him out of the way, and ran towards the door . . . and Robert hit at him with the stick." Mr. Kelly went out at the door, and appellant and Robert ran. He hesitated long enough to pick up the money that Robert had dropped from his hands as Mr. Kelly went by him. They got back in the car, threw the bank sack out on the side of the highway, eventually drove to the Crenshaw section, where they pulled off the road and divided the money, "tearing the money wrappers off of the bills, and separating the money." He said they divided it equally but that appellant "wound up with a little bit more than Robert, because I picked up that off of the floor that Robert dropped." Sheriff Thrash further testified that he afterwards drove to the Crenshaw community and found two money wrappers, which were admitted in evidence. In addition, Sheriff Thrash said that on November 1 appellant handed him $63 and told him it was part of the money he took from Mr. Kelly's place and to return it to Mr. Kelly.

The sufficiency of the evidence to sustain a conviction of robbery is not seriously questioned on appeal, and we are convinced that the evidence amply supports the verdict.

Appellant's sole target is the action of the trial court in admitting evidence of the confession of defendant as narrated in the testimony of Sheriff Thrash and Trooper Pemberton.

Appellant does not contend that the State did not present evidence that the confession was voluntary, but appellant strongly insists that the trial court abused its discretion in admitting the evidence of the confession.

We understand appellant's contention to be that the trial judge should have disbelieved the testimony of the two law enforcement officials, which appellant states was "contradictory in material aspects" and believe the testimony of the accused, which, according to appellant, was to the effect that "inducements were made by both interrogators." Appellant further contends that portions of the confession as testified to by either Sheriff Thrash or Trooper Pemberton or both were incorrect.

We do not consider that discrepancies between the testimony of Sheriff Thrash and the testimony of Officer Pemberton discredit the testimony of either. On the other hand, we think that under all the circumstances shown by the record their failure to track one another precisely as to every detail of what took place, the exact time and place that everything was done and said, who was or were present at such time and place, and other details, tends to strengthen their testimony, if it needs strengthening, rather than weaken it. Notwithstanding any such discrepancies, after protracted questioning by defense as well as questioning by the State, this testimony is in essential features sufficient to show full compliance with all of the prerequisites to the admission in evidence of a confession as set forth in *Miranda v. Arizona,* 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 and related cases.

Appellant, testifying on voir dire out of the presence of the jury, said that Officer Pemberton told him that if he cooperated, Sheriff Thrash could help him because he was a powerful and influential man and that Sheriff Thrash would help him if the cooperated and didn't tell any lies. This was denied by Officer Pemberton. He further said that Officer Pemberton told him the death penalty was coming back and that he should plead guilty and not take the case to trial, which was denied by Officer Pemberton. Both officers testified emphatically that they offered no inducement whatever or threat of any kind.

Much is made by appellant of testimony by Officer Pemberton as follows:

"Q Could you have told him it would go lighter on him if he cooperated?

"A Yes, sir, I could have. We were talking . . .

"Q And after this—sometime after you could've told him that, he did make a statement, didn't he?

"A Mr., I could've told him anything, but I didn't.

"THE COURT: But the question is, did you tell him that?

"THE WITNESS: No, sir, I did not.
———

"THE COURT: All, right, then . . . ."

Appellant cites *Womack v. State,* 281 Ala. 499, 205 So.2d 579, in which it was held that a confession was inadmissible in view of undisputed testimony that an inducement "could have" been made. The difference is that here the witness clearly implied a condition contrary to fact, the mood of which would have been subjunctive[1]; in *Womack,* the witness made a factual statement, without any condition express or implied.

The testimony of appellant on voir dire as to the circumstances leading to his confession was wanting in trustworthiness, we think. He denied that he "verbally confessed," but he admitted that he signed a written confession, although he said he didn't read the confession. There is no contention on his part that he was mistreated by the officers other than in the matter of offering him inducement, which, of course, is sufficient, if true, to vitiate

---

1. Thus spoke Job (expressing the condition) to his miserable comforters: "I also *could* speak as ye do: *if your soul were in my soul's stead,* *I could* heap up words against you, and shake mine head at you." (Emphasis supplied)
                                        Job 16:4

the confession as evidence. Nevertheless, it is extremely difficult to believe that the claimed inducement would have influenced him to sign the confession without his knowing in substance, at least, what was in the confession. He was a high school graduate and had had a year and a half in college, although he said he had not done well in college.

The trial judge was acting well within his discretion in accepting the testimony of the law enforcement officers as to the circumstances preceding the confession in preference to the testimony of defendant. Furthermore, our review of such testimony convinces us that he reached a correct conclusion.

■ In insisting that the confession should not have been admitted in evidence, appellant emphasizes the period of time between the arrest of appellant and the confession, approximately seven and one-half hours. Unquestionably, this is a circumstance to be taken into consideration, but it is not sufficient under all the circumstances to make the confession inadmissible. Promptly after his arrest, he was informed of his constitutional rights. At that time appellant denied being in Titus on the day of the robbery and refused to make a statement. He was then taken to the fingerprint room of the Elmore County Jail. Upon being questioned there, he again denied knowing anything about the robbery. He made such denial to Sheriff Thrash and Officer Pemberton, and thereafter made a similar denial to Officer Pemberton when Sheriff Thrash was not present. Sheriff Thrash had a third conversation with appellant in the presence of Robert Mitchell, and at that time appellant confessed. The confession was given some two to three hours after the second conversation with Sheriff Thrash. He was not questioned over an hour and a half on

any of the several occasions he was questioned.

The testimony of defendant is free of any contention that he was adversely affected by the manner or length of the interrogation. His own testimony was to the effect that he was kindly treated rather than roughly intimidated. He does not even imply the type of mistreatment charged by defendant in *Botsford v. State,* 54 Ala.App. 482, 309 So.2d 835, in which a confession was taken after defendant had been in custody of the officers for about the same period of time as defendant in this case.

At the time of the confession defendant had not been taken before a magistrate. Appellant cites Code of Alabama, Title 15, Section 160, requiring an officer after the arrest of a person to "forthwith take him before a magistrate" and further cites *Cary v. State,* 76 Ala. 78, holding that one cannot plead as an excuse for failure to obey the provision of the statute that he was trying to obtain a statement from the arrested person incriminating himself or some other person. Appellant does not contend that the failure to have taken defendant before a magistrate in and of itself precludes the admission in evidence of the confession.[2] He urges "that it is one of the elements to be considered in determining whether a confession is voluntary and is the product of the rational and free intellect of the appellant." We have considered such element with all the other circumstances. Taking all of such circumstances into consideration, we are of the opinion that the confession of defendant was freely and voluntarily made, that he was fully advised of his privilege as to self-incrimination and his rights as to counsel, that he knowingly and intelligently waived such constitutional rights, and that the trial court was not in error in admit-

---

2. Appellant's attorney recognizes that the settled rule is against any such contention and has been since the *McNabb* Rule (note based on a constitutional question), *McNabb v. United States,* 318 U.S. 332, 63 S.Ct. 608, 87 L.Ed. 819, was rejected by the appellate courts of Alabama in *Ingram v. State,* 34 Ala.App. 597, 42 So.2d 30, *rev'd on another ground,* 252 Ala. 497, 42 So.2d 36 (1949). McElroy, *Law of Evidence in Alabama* § 200.08.

ting the testimony as to defendant's confession over the objections of defendant.

The judgment of the trial court should be affirmed.

The foregoing opinion was prepared by Supernumerary Circuit Judge Leigh M. Clark, serving as a judge of this Court under Section 2 of Act No. 288 of July 7, 1945, as amended; his opinion is hereby adopted as that of the Court. The judgment below is hereby

Affirmed.

All the Judges concur.