329 So.2d 618

**Joe Lee HARRIS**

v.

**STATE.**

**6 Div. 889.**

Court of Criminal Appeals of Alabama.

March 16, 1976.

Joel L. Sogol, Asst. Public Defender, Tuscaloosa, for appellant.

William J. Baxley, Atty. Gen., and G. Daniel Evans, Asst. Atty. Gen., for the State, appellee.

CLARK, Supernumerary Circuit Judge.

Appellant was convicted of robbery and sentenced to ten years imprisonment in the penitentiary. On the trial he was positively identified by the victim as one of two men who had held the victim up with a shotgun and robbed him as he was proceeding on foot from his work to his home in Tuscaloosa. Defendant did not take the stand, and no evidence was offered in his behalf.

Appellant urges that the trial court committed reversible error in overruling a motion of defendant to suppress any identification resulting from an improperly conducted lineup. One ground of the motion was that the lineup was "overly suggestive."

The motion to suppress was not ruled upon until after the State had rested its case. The motion had been filed more than a month before the trial day. Why the ruling on the motion was not invoked before trial is not clear. The record does not indicate that there was any evidence presented on the motion. Testimony as to the lineup identification and an in-court identification was introduced in evidence without objection. All of this apparently took place without any request that the court hear or determine the motion to suppress, which apparently was not mentioned until the court observed at the conclusion of all testimony:

> "THE COURT: Gentlemen, in the court file of this case, I note there is a motion to suppress the identification based on the lineup and so forth. I apparently never did rule on the motion. I may have but I want to overrule that motion at this time."

If defendant thought there was any merit in his motion to suppress, he should have proceeded to obtain a hearing of the motion and a ruling thereon. Nevertheless, we are not persuaded by the evidence before us that the lineup procedure was unduly suggestive or intentionally arranged so as to lead to an identification of defendant. According to the record before us, the exclusive source of any information that we should take into consideration, five persons were in the lineup. They were all of the same race as defendant and included the person identified by the victim of the robbery as one of the two who had robbed him. They were not all the same age but "four of them were . . . within two or three years of one another." The fifth was a "good bit older." Soon after the robbery, the victim had stated to the officers who arranged for the lineup that his robbers were in their mid-twenties. Although it would have been better if all of those in the lineup had apparently been approximately the same age, there is nothing to indicate that the oldest person in the lineup was so different in appearance from the rest as to require his exclusion. Certainly, there is no indication of any intentionally unfair conduct on the part of the officers.

In our opinion, the lineup met the test of *Coleman v. Alabama*, 399 U.S. 1, 90 S.Ct.

1999, 26 L.Ed.2d 387, as the identifications were "entirely based upon observations at the time of the assault [robbery] and not at all induced by the conduct of the lineup."

There was also an avoidance of "a very substantial likelihood of irreparable misidentification," denounced in *Simmons v. United States,* 390 U.S. 377, 384, 88 S.Ct. 967, 971, 19 L.Ed.2d 1247. As stated in *Neil v. Biggers,* 409 U.S. 188 at 199, 93 S. Ct. 375, at 382, 34 L.Ed.2d 401:

> "The purpose of a strict rule barring evidence of unnecessarily suggestive confrontations would be to deter the police from using a less reliable procedure where a more reliable one may be available, and would not be based on the assumption that in every instance the admission of evidence of such a confrontation offends due process."

■ Fairness to both the suspect and the victim should inhere in a lineup. The cards should not be stacked against either. The sooner the lineup the greater the likelihood of a correct result. The two persons suspected were apprehended about 4:30 A. M., within thirty of forty-five minutes from the time the victim reported the robbery to the police and within approximately an hour from the time of the robbery. They were located in a house about six blocks from the scene of the robbery. The automobile which the victim said the robbers were in just before the robbery was described by the victim to the police, who found it at the house. The police knocked at the door and were admitted by the woman who lived there. About six or seven men in all were there, including defendant and Fred Hamner, the other person brought to the lineup as one of the suspects. Upon being asked by defense counsel whether he knew if they came together, a witness replied "We were told they came together.", and upon being further questioned by State's counsel on the point he stated that "The lady that opened the door" when they entered told them "they came together." Without any delay,

the officers asked the two if they would go to police headquarters to let the victim take a look at them and they responded without any reluctance that they would do so, and they promptly went to police headquarters, where they were confronted by the victim while in the lineup.

■ Appellant stresses the factors set forth in *Neil v. Biggers, supra,* to be considered in evaluating the likelihood of misidentification: (1) the opportunity for the witness to view the criminal at the time of the crime; (2) the witness' degree of attention; (3) the accuracy of the witness' prior description of the criminal; (4) the level of certainty demonstrated by the witness at the confrontation and (5) the length of time between the crime and the confrontation. As to (1), appellant argues that the victim did not have much of an opportunity to view the robbers, particularly the one he identified as defendant, who was standing behind him most of the time that the other robber was in front of him with a shotgun directed at him. But he had seen them before the robbery, both walking toward him and at another time while standing by the automobile in which they had been riding. According to the witness, defendant went in the pockets of the witness and took money, a cigarette lighter, and other items. He said he got a look at his face, although it was "Not too good." As to (2), appellant argues that the witness' attention was directed more at the shotgun in front of him that at the man identified as defendant behind him. This also ignores the fact that the witness had seen the persons at least twice before the robbery took place. Also, the situation was obviously such that one look at the man behind him and who was stealing his possessions from his pockets would not have been casual. As to (3), it is urged by appellant that the evidence shows that though the victim identified defendant as the taller one of the two that held him up, the other man, Fred Hamner, was some five inches taller than defendant. This is a discrepancy, but one that is readily un-

derstandable in that the two were not side by side at the time of the robbery and witness himself said that as to the man holding the gun, "I wasn't too sure about his height." As to (4) and (5) there were an unquestionably high level of certainty demonstrated by the witness at the confrontation and an extraordinarily short time between the crime and the confrontation. Taking into consideration all of the circumstances and the several criteria listed, the reliability of the identification is impressive.

Appellant also contends that the trial court committed reversible error in admitting in evidence a cigarette lighter.

A witness for the State, investigator E. T. Elmore, testified that soon after defendant and Hamner were taken to police headquarters for interrogation a cigarette lighter and some flints were found in the room in which Hamner was questioned. The witness said he had placed them in an envelope, and after proper identification the contents of the envelope were offered in evidence by the State. Defendant objected stating "There is no connection between the cigarette lighter and Mr. Harris.", and thereafter stating "There has been no connection between Mr. Hamner and this person right here." We think the objection was not well taken. There was a connection shown between defendant and Hamner. They were apprehended together in a house six blocks from the place of the crime within approximately an hour thereafter. There was evidence that they had been together in the same car. Furthermore, the victim of the robbery had identified the cigarette lighter as the one that had been taken from him by defendant. The relevancy of the evidence consisting of the particular cigarette lighter is clear as pointing to a circumstance of the corpus delicti and as to defendant's participation therein.

The argument now made for the first time that the lighter flints "were ir-relevant on two other counts" did not form any part of the objection to the particular evidence. The objection as now grounded comes too late. Only those grounds of objection presented to the trial court can serve as a basis for a reversal of its action. *Craig v. State*, 50 Ala.App. 618, 282 So.2d 59; *Pope v. State*, 39 Ala.App. 42, 96 So.2d 441, cert. denied, 266 Ala. 699, 96 So.2d 447.

We have considered all contentions of appellant and have reviewed the entire record in a quest for any error prejudicial to defendant and have found none. The judgment appealed from should be affirmed.

The foregoing opinion was prepared by Supernumerary Circuit Judge Leigh M. Clark, serving as a judge of this Court under Section 2 of Act No. 288 of July 7, 1945, as amended; his opinion is hereby adopted as that of the Court. The judgment below is hereby

AFFIRMED.

TYSON, HARRIS, DeCARLO and BOOKOUT, JJ., concur.