[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 846 
This is an appeal by an indigent from a judgment and conviction for burglary of a motor vehicle and grand larceny, wherein William David Burlison was found guilty by a jury in Covington County and sentenced to three years imprisonment.
A motion for a new trial was denied by the trial court, and the matter is before this court for review.
On January 1, 1977, Wyndol Laird went to the "Dinner Bell Restaurant and Lounge" just north of Florala, Alabama, parked his 1976 Chevrolet truck at the north end of the parking lot, and went inside. He had been inside for approximately an hour when he was informed that, "several CB" radios had been stolen from various vehicles in the parking lot. Going outside, he discovered that his truck had been entered and his CB radio and antenna were missing. The glove compartment of his truck had been broken into and two full bottles of Jack Daniels and Kentucky Gentlemen whiskey, which had been in the glove compartment, were now empty. Subsequently, Laird discovered his "CB" antenna on the back floorboard of an automobile belonging to one Jerry Lee Simmons.
In response to a telephone call from the Florala Police Department, Deputy Sheriff George Szpek went to the Dinner Bell Restaurant, and, upon his arrival, discovered some fifteen cars had been broken into, one of which belonged to Laird.
Just after arriving, Szpek saw an antenna lying on the floorboard of Jerry Simmons' car. Szpek then went into the restaurant and asked the appellant, Burlison, to come outside. Burlison was placed under arrest and the Miranda warnings were read to him. According to Szpek, the appellant did not make any statement, but Szpek said he noticed about fourteen or fifteen cuts on Burlison's hands. They appeared to be covered with blood which "was still moist." *Page 847 
Jerry Simmons was located and, in the hearing of the appellant, Burlison, Simmons stated that Burlison had been driving his automobile. Simmons was also placed under arrest.
When the two empty whiskey bottles were removed from Laird's truck by police officers, they discovered what appeared to be bloodstains on the bottles. Bloodstains were also found on the antenna on Simmons' car and in Laird's truck.
At the police station, two pieces of glass, which appeared to be windshield glass, were removed from Burlison's coat pocket. Although the windshields of some fifteen vehicles were broken that night in the course of the burglaries, none of the windows in Laird's truck was broken.
None of the fingerprints taken from the items at the scene matched those of the defendant. However, a palm print taken from one of the whiskey bottles was that of Jerry Simmons, but Simmons' hands did not appear to be cut or bleeding at the time of his arrest.
During the trial Szpek testified that the only statement appellant made to him was in answer to a question about how he cut his hands. At that time Burlison had responded; "What if I done it laying bricks, man?" Szpek also testified that the antenna found in Simmons' car had stains on it which appeared to be blood. Szpek identified pictures of Simmons' automobile, which showed bloodstains on the interior of the window.
At the end of the State's case, the defendant made a motion to exclude the State's evidence which was denied. Defendant then presented testimony by Ann Simmons, the wife of Jerry Lee Simmons, who stated that the appellant was at her home about 7:00 or 7:30 P.M. on January 1, 1977, and that he and her husband were drinking Jack Daniels whiskey from the same bottle. She claimed that it was that bottle that was left in the Simmons' car on the night of the burglaries at the Dinner Bell Restaurant. She also said that, after the appellant arrived at her home, her son had broken a plate and the appellant had cut his hands when he attempted to pick up the pieces.
When she and her husband and appellant went out to the Simmons' vehicle, the car failed to start and the battery had to be "fixed" before it would start. After the car was repaired, she and her husband had gone with appellant to see his girl friend and then to a liquor store in Florala, where they purchased a bottle of Lord Calvert whiskey. Although she had testified that the appellant's hands were bloody before they went to the lounge, she claimed that she did not get any bloodstains on her clothing when she danced with him.
They had been at the Dinner Bell Restaurant for approximately an hour and a half when the appellant used their car to go see his girl friend, Renee Coffield. He was gone for approximately forty-five minutes.
Mrs. Simmons testified that she had seen blood on the window of their car and also recalled that Officer Szpek had pointed out the antenna lying on the floorboard of their car.
Renee Coffield testified that she had seen the appellant around 9:00 P.M., January 1, 1977, at the State Line Liquor Store, along with Jerry and Ann Simmons. She recalled seeing a whiskey bottle in the Simmons' car at the time. Appellant had wanted her to accompany them to the Dinner Bell Restaurant.
The appellant testified that he was a brick mason, and on January 1, 1977, had gone to the Simmons' residence at 7:00 P.M. He stated that he had been drinking whiskey that evening and later cut his hand while picking up some pieces of a plate. He claimed that he cut his hand again while changing the battery in the Simmons' vehicle.
Around 9:00 P.M., he went to the Dinner Bell Restaurant and Lounge with the Simmonses where they remained until 10:00 or 11:00 P.M. At that time, appellant borrowed the Simmons' vehicle to go to town. When he returned to the parking lot he almost hit one of three "dudes" as he drove by a truck where they were standing. As a *Page 848 
result, he had a few words with them and the last time he saw them they were walking toward the Simmons' car.
After appellant returned to the lounge, Hayward Thomas, a policeman, came in and took him by the arm and led him to where Officer Szpek was standing. According to the appellant, the officer said he was going to "bust" him because he had driven up in an "RT awhile ago squealing your tires through the parking lot."
Appellant stated that the officer read him a couple of rights but did not finish them because someone came up. According to appellant, the officer never said anything about the CB radio or the antenna.
Afterwards, he and Simmons were taken to the Florala police station, where the radio operator at the police station removed the glass from his pockets.
In his testimony, appellant pointed out that the pictures showing his hand were taken at 3 o'clock in the morning, at the time he was arrested, and that they showed that the blood on his hand was dry.
Hayward Thomas was called as a rebuttal witness. He testified that a small particle of glass was removed from the appellant's jacket at the police station by Deputy Szpek. He said that he heard Szpek ask the appellant about the cuts on his hand. According to Thomas, the appellant responded; "What if I cut them working . . . I lay brick, blocking."
James Peters, operator of the Dinner Bell Restaurant and Lounge, was called as a rebuttal witness and testified that he had had a conversation with appellant before Officer Thomas came in. According to Peters, the appellant did not have any cuts or blood on his hands before he left the lounge the first time.
 I
The appellant contends that the evidence was not sufficient to sustain his conviction for burglary and grand larceny. He maintains that it was error on the part of the trial court to deny his motion to exclude the State's evidence. He argues further that; "The crux of this case is that it is based upon inferences . . ."
The crime of burglary may be proved by circumstantial evidence where such circumstantial evidence presents a jury question. Wallace v. State, 52 Ala. App. 331, 292 So.2d 140. The corpus delicti of larceny consists of two elements: (1) That property was lost, and (2) that it was lost as a result of felonious taking. Copeland v. State, 57 Ala. App. 482,329 So.2d 171. Proof of the corpus delicti may be shown by circumstantial evidence, and, if there is evidence from which its existence may reasonably be inferred, the question of the sufficiency and weight of the evidence must be submitted to the jury. Burlesonv. State, 52 Ala. App. 399, 293 So.2d 317.
In addition, the loss of property by larceny may be proved by circumstantial evidence where there is proof of facts and circumstances showing a loss and a felonious taking. Copelandv. State, supra.
Possession of recently stolen goods will support an inference of burglary if there is also proof of breaking and entering so connected in time as to permit the inference that the larceny was a product of that breaking and entering. Wildman v. State,42 Ala. App. 357, 165 So.2d 396; Miller v. State, 43 Ala. App. 287, 189 So.2d 576; Rutherford v. State, 48 Ala. App. 289,264 So.2d 210. See Franklin v. State, Ala.Cr.App., 357 So.2d 364;Breazeale v. State, 51 Ala. App. 320, 285 So.2d 130.
Although the evidence in the present case is purely circumstantial, and there is no direct proof that the appellant burglarized the vehicle and took the radio and the antenna from the Laird truck, there are facts which demonstrate appellant's connection with the crime. During the time that the vehicles in the restaurant parking lot were broken into, the appellant had exclusive possession and control of the automobile owned by Jerry Lee Simmons. After the discovery of the burglary of the Laird vehicle, the victim's CB antenna was found in the rear floorboard of Simmons' automobile, which had been in appellant's custody *Page 849 
immediately prior to the occurrences. A whiskey bottle found in the victim's truck bore bloodstains, and the door handle of the Simmons vehicle, as well as the antenna found in the Simmons car, bore evidence of the same stains.
There was testimony that, prior to the time appellant left the lounge, his hands were not cut, but it was shown that they were freshly cut and bleeding at the time of his arrest. Finally, after a search of his clothing at the police station, broken glass similar to that of several of the burglarized vehicles was found in appellant's pocket.
The mere presence of a stolen antenna in a vehicle, which was in appellant's possession and control for only some forty-five minutes, does not, in and of itself, make out a prima facie case of burglary. However, considering the totality of the circumstances in the present case, there is sufficient evidence to sustain the conviction. By his own testimony, as well as that of other witnesses, appellant was shown to have been in exclusive control and custody of the Simmons vehicle, in which the stolen antenna was found, at approximately the time the crime was alleged to have occurred.
Furthermore, at the time of his arrest, appellant's hands were freshly cut and bleeding, and, when questioned as to how he had cut them, appellant gave the answer: "What if I done it laying brick, man." This response was inconsistent with the explanation appellant gave at trial, which was that he had cut his hands on a broken plate and while changing an automobile battery at the Simmons' residence.
Bloodstains were found on a whiskey bottle in the victim's truck, on the interior handle of the Simmons' automobile, and on the antenna itself. Also, Deputy Szpek said he had noticed bloodstains on appellant's hands after he had placed handcuffs on the appellant.
Pieces of automobile safety glass were found in the appellant's coat pocket, and, although the Laird vehicle did not have a broken window, the windows of the other vehicles burglarized approximately at the same time were, in fact, broken.
Although the radio from the victim's truck was not found in appellant's possession, it is our judgment that this combination of circumstances presents a question for the jury as to the appellant's culpability in both the burglary and the grand larceny. Breazeale v. State, supra; Franklin v. State, supra; White v. State, 294 Ala. 265, 314 So.2d 857.
 II
It is contended that part of Officer Szpek's testimony, concerning his conversation with Jerry Lee Simmons regarding who was driving Simmons' automobile the night of the crime, was hearsay and inadmissible.
From the record, we find the following testimony:
 "Q. All right, with relation to the police car where were you when you talked to Mr. Simmons?
"A. In relation to the police car?
"Q. Yes, and the Dodge.
"A. Where were we standing?
"Q. Yes.
"A. Right next to them, each other.
 "Q. Were you between them or were you on one side or the other of them?
 "A. No, sir, the patrol car was parked in the street and we were standing there and the other car was on the other side of the road.
 "Q. How far were you from both cars when you were talking to Jerry Lee Simmons?
"A. Not much more than five or six feet.
 "Q. How far from David Burlison were you when you were talking to Jerry Lee Simmons?
 "A. About the same, he was sitting in the back of the police car.
"Q. How is that?
"A. He was sitting in the back of the police car.
"Q. Was the door of the police car open?
"A. Front door was, yes, sir. *Page 850 
 "Q. And then I'm six foot tall, that is about how far you were from this Defendant, William David Burlison, when you were talking to Jerry Lee Simmons?
"A. Yes, sir, about five or six feet.
 "Q. All right, what did Jerry Lee Simmons tell you about whose car it was?
"MR. JONES: I object to that.
"THE COURT: Let me ask the witness a question.
"MR. McGILL: Yes, sir.
 "THE COURT: Do you know whether or not the window was down in the car that Burlison was sitting in, the patrol car?
 "MR. SZPEK: No, I couldn't say for sure if it was or not.
"THE COURT: Overruled.
"Q. Were you talking in a normal tone of voice?
"A. Yes, sir.
 "Q. In your judgment, if you had been seated in that police car could you have heard you?
"MR. JONES: I object to that.
"A. Yeah.
"THE COURT: Overruled.
"MR. JONES: Except.
 "Q. All right, did you ask Jerry Lee Simmons whose car it was?
"A. Yeah.
 "MR. JONES: I object. It is not a proper predicate and it is not clearly shown that it was stated in the presence of the Defendant.
"THE COURT: Overruled.
"MR. JONES: Except.
"Q. Did he tell you?
"A. Yes, sir.
"Q. Did he tell you who had been driving?
"A. Yes, sir.
"Q. Who did he say had been driving?
"A. Mr. Burlison.
 "Q. All right, did you also place Mr. Simmons under arrest at that time?
"A. Yes, sir.
"Q. What did you do with him?
"A. Placed him in the car."
This same evidence was freely admitted from the stand by the appellant, and he also admitted driving Simmons' car on the night of the offense. Later, similar evidence was presented by defense counsel through Simmons' wife, Ann.
Any error in admitting this testimony was eradicated when the same evidence was later elicited by defense counsel and allowed to remain in the record without objection or exception. Pittsv. State, 291 Ala. 136, 279 So.2d 119. The appellant cannot now complain of the admission of evidence where he, himself, has testified to the identical facts, or where the matter in question is uncontradicted. Yelton v. State, 294 Ala. 340,317 So.2d 331. Going further, in Townsend v. City of Birmingham,54 Ala. App. 213, 307 So.2d 24, this court held that it was a question of fact whether a conversation, the substance of which was related by a witness at trial, was audible to appellant, who was standing outside a closed hotel room door at the time of the conversation. This court determined there that a jury could reasonably infer that the appellant heard the conversation, and that the matter was properly submitted to the jury.
Under the facts in the present case the record reveals that at the time of the conversation, Szpek and Simmons were standing approximately six feet from the appellant. Szpek testified that he was talking in a normal voice and that the front door was open on the police car, but that he did not know whether the rear window of the car, next to which the appellant was seated, was open.
In view of the foregoing evidence, it is our judgment that a jury could reasonably infer that the conversation between Szpek and Simmons could be heard by the appellant, and the matter was properly submitted to the jury. Townsend v. City of Birmingham, supra.
The substance of Szpek's conversation with Simmons was merely that Burlison had driven his automobile on the night in question. This was a fact uncontradicted and freely admitted from the stand by the *Page 851 
appellant. Therefore, if error in admitting Szpek's testimony could be assumed, arguendo, there was no harm to the appellant.
 III
The appellant complains that the evidence of the two whiskey bottles and a palm print taken from the bottle found in the victim's vehicle was erroneously admitted.
Articles which are properly identified and which tend to show the commission of the crime, or the manner in which it was committed, or to elucidate some matter in issue, are admissible for inspection and observation by the jury. Lackey v. State,41 Ala. App. 46, 123 So.2d 186; Franks v. State, 45 Ala. App. 88,224 So.2d 924. Also, where the evidence is probative of an element of the corpus delicti and of the defendant's participation in the offense, it is relevant and should be admitted. Harris v. State, 57 Ala. App. 558, 329 So.2d 618.
The two whiskey bottles which were found in victim's truck resembled the bottle which had been in Simmons' automobile when Simmons, his wife, and the appellant arrived at the Dinner Bell Restaurant and Lounge. Although Simmons' palm print and some untyped bloodstains were found on one of the bottles, there was evidence that Simmons himself had not left the club at the time of the offense. There was evidence that the appellant had left the club, however, and had driven Simmons' automobile at the approximate time the crime occurred. He therefore would have had access to the bottles during that period. Finally, it was shown that shortly after the auto burglary, at the time of his arrest, the appellant had freshly cut and bleeding hands.
In view of the foregoing evidence it is our judgment that the bottles and the palm print were relevant and tended to point to a circumstance probative of the appellant's commission of the crime, by indicating his presence in the victim's car at the time of the offense. Franks, supra; Harris, supra.
Under these circumstances, there was no error in the admission of the evidence.
 IV
It is argued that the statements made by appellant at the police station were erroneously admitted because the Miranda
warning that had been given to him at the time of his arrest was not repeated before the questioning at the station. For the same reason, appellant argues that the admission of the photographs of his hands, which were taken at the police station after his arrest, was error.
At the time of the appellant's arrest, he was advised of his constitutional rights and was informed of the charge against him. He made no statement at that time but some forty-five minutes later, when questioned at the police station, he did make the following statement:
 "Q. Mr. Szpek, after you placed Mr. Burlison under arrest and Mr. Simmons under arrest did you later take them to the Florida Police Department?
"A. Yes, sir.
 "Q. And while you were in the police department there did you have a conversation with Mr. Burlison?
"A. Yes, sir.
"Q. Who was present?
 "A. Hayward Thomas and I believe there was another city police officer.
"Q. Where were you in the police station down there?
"A. In the office.
 "Q. In the office. Did you or anyone in your presence and in the presence of this Defendant at that time threaten or abuse him in any way to get him to talk with you or make a statement?
"A. No, sir.
 "Q. And did you or anyone in your presence and in the presence of this Defendant offer him any reward or hope of reward to get him to talk with you or make a statement?
"A. No, sir.
"Q. Did he talk with you after that?
"A. No, sir. *Page 852 
"Q. Well, did he answer any of your questions?
"A. Yes, sir.
 "Q. All right, did you ask him about how he cut his hands?
"A. Yes, sir.
"MR JONES: May I put this in the record, please sir?
"THE COURT: Yes.
 "MR. JONES: Which we have discussed this matter here outside the presence of the Jury, of course, you stated you are going to overrule me but I want to put this in the record.
 "THE COURT: No, I stated, I would rule on your objections at the time when they were assigned.
 "MR. JONES: Oh, you did. I beg your pardon, but the fact is there is no connection, of course, being connected between those items and — Well, let me hold it to that. This statement here being solicited from this witness without a showing of the Miranda
warning being made to the Defendant, at this point. Previous at the Dinner Bell but this is an occasion down at the station house. No Miranda, and we object on those grounds.
"THE COURT: Overruled.
"MR. JONES: Except.
 "Q. About what time of the night was this, Mr. Szpek? Just your best judgment?
"A. It was after twelve-thirty.
 "Q. All right, and did you ask him about the blood on his hands?
"A. Yes, sir.
"Q. What was his answer this time?
 "MR. JONES: Again, we object on the additional grounds that I have previously cited as to no Miranda
warning, and I object on those grounds. No proper predicate being laid and assign that opposition — object to the question.
"THE COURT: Overruled.
"MR. JONES: Except.
"Q. What did he say?
"A. What if I done it laying brick, man."
It is not necessary for an accused to be given a repeatedMiranda warning in all cases before each separate interrogation. Whether it is necessary for warnings to be repeated is determined by the particular facts in each case, taking into consideration the length of time between the repetitions of the warning and the events transpiring between the interrogations. Jones v. State, 47 Ala. App. 568,258 So.2d 910; Johnson v. State, 56 Ala. App. 583, 324 So.2d 298; Andersonv. State, Ala.Cr.App., 339 So.2d 166.
In the present case, the appellant was given the Miranda
warnings at approximately 12:00 P.M. Between 12:30 P.M. and 12:45 P.M., some forty-five minutes later, he was questioned at the police station. There was no time lapse comparable to that shown in Johnson v. State, supra, nor any such peculiar circumstances between interrogations which mandated a repetition of the Miranda warnings. Austin v. State,56 Ala. App. 307, 321 So.2d 272; McBee v. State, 50 Ala. App. 622,282 So.2d 62.
Appellant relies on Michigan v. Mosley, 423 U.S. 96,96 S.Ct. 321, 46 L.Ed.2d 313, for support of his contention that an additional Miranda warning was required after his arrest. TheMosley case can be distinguished from the facts presented here. In that case, the Miranda warnings were repeated to the defendant before he was questioned on a separate charge. There, the court held that the defendant's refusal to answer any questions about a robbery he had allegedly committed was timely honored and not violated when he was given an additionalMiranda warning before being questioned about a separate murder charge. In the present case, the appellant was not questioned on a separate charge at the police station, but about the same charge for which he was arrested.
The appellant also relies on White v. State, 294 Ala. 265,314 So.2d 857, for support of his assertion that a Miranda
warning is required in a police-dominated interrogation atmosphere. We recognize that the Alabama Supreme Court did state in White, that the Miranda warnings must be given (in such an atmosphere), unless other *Page 853 
fully effective means are utilized and the accused is assured of continuous opportunity to exercise those rights. However, the facts in the present case can be distinguished. In White, supra, White was never warned of his Miranda rights because his attorney was present at the time of the arrest and signed the appellant's statement as a witness. Here the appellant was read his Miranda warnings immediately upon his arrest.
Once Miranda warnings are given at the beginning of the questioning, it is not necessary to repeat the warnings at the beginning of each successive interview. People v. Hill,39 Ill.2d 125, 233 N.E.2d 367; Johnson v. State, supra. This court recognized in Austin v. State, supra, that the time lapse alone is a circumstance to be taken into consideration, but is not sufficient, in, and of itself, to make the confession inadmissible.
Appellant's statement concerning how he received the cuts on his hands was freely given without coercion after he had been fully advised of his constitutional rights. The trial court committed no error in admitting this statement.
Regarding the admission of the photographs of the appellant's cut and bleeding hands, it is our judgment that these had a reasonable tendency to prove or shed light upon a material fact in issue. Wilson v. State, 31 Ala. App. 21, 11 So.2d 563. For this reason, they were admissible. Brown v. State, 55 Ala. App. 615, 318 So.2d 311. Furthermore, the photographs were not "testimonial or communicative" evidence, but real physical evidence. Shiflett v. State, 52 Ala. App. 476, 294 So.2d 444.
Based on the foregoing, it is our judgment that the admission of the statement and the taking of the photographs at the police station were proper.
 V
Finally, appellant complains that testimony concerning the particles of safety glass that were removed from his jacket at the police station was erroneously admitted at trial. Under the facts of this case, the appellant was properly arrested with probable cause and, as we have held in preceding paragraphs, was adequately apprised of his Miranda rights; therefore, the testimony concerning the particles of safety glass was admissible.
We note from the record that appellant's counsel allowed the prosecutor to cover the subject of the glass particles in full before raising any objection. After a question is asked and answered an objection comes too late, and the trial court's ruling will not be declared in error without a motion to exclude and an adverse ruling thereon. Oatsvall v. State,57 Ala. App. 240, 327 So.2d 735.
Admission of this testimony was permissible as part of the res gestae going to prove the identity of the appellant. The burglary and larceny in question were part of a series of burglaries occurring on the same occasion at the same time. Under these circumstances, where several offenses constitute one criminal transaction, evidence of all the crimes could be given as part of the res gestae of the offense with which the defendant is charged. Parsons v. State, 251 Ala. 467,38 So.2d 209; Levene v. State, 26 Ala. App. 428, 161 So. 268.
Because Laird's truck, the subject of this prosecution, had no broken windows, there is no immediately apparent connection between the glass and the offense. However, the windows of the other vehicles were broken and particles of glass were found on the appellant.
Also, the glass was admissible to prove identity in relation to appellant's freshly cut and bleeding hands. Brasher v.State, 249 Ala. 96, 30 So.2d 31.
It would seem that the presence of the particles of broken safety glass in the appellant's jacket, under the circumstances of this case, would bring it within the rule as being part of the res gestae. Brasher v. State, supra.
In conclusion, when the testimony concerning the particles of broken glass *Page 854 
found on appellant is considered along with the condition of his hands at his arrest, the fact that a series of burglaries occurred at the same time and in the same location would provide probative value both in establishing the appellant's identity and in resolving the main issue of culpability.Brasher v. State, 33 Ala. App. 13, 30 So.2d 26; Levene v. State, supra; Johnson v. State, Ala.Cr.App., 335 So.2d 663.
For the foregoing reasons, the testimony concerning the broken particles of safety glass was properly admitted.
We have considered all the contentions of the appellant and have reviewed the entire record and have found no error prejudicial to this defendant; therefore, the judgment of conviction appealed from is affirmed.
AFFIRMED.
HARRIS, P.J., and TYSON and BOWEN, JJ., concur.
BOOKOUT, J., concurs in result.