WELCH, Presiding Judge.
 

 Steven Todd Johnson was charged with two counts of first-degree theft of a motor vehicle, § 13A-8-3, Ala.Code 1975, and one count of third-degree burglary, § 13A-7-7, Ala.Code 1975, for his involvement in the thefts of a Kawasaki brand “mule” utility vehicle and a four-wheeler. Johnson was also charged with unlawful possession of a controlled substance, § 13A-12-212, Ala.Code 1975. On Johnson’s motion, the eontrolled-substance charge was severed from the remaining charges. Johnson was tried before a jury and was convicted on the theft and burglary charges. The trial court sentenced Johnson, a habitual felony offender, to serve three concurrent 10-year terms of imprisonment, and the court ordered Johnson to pay court costs, attorney fees, restitution, and an assessment to the Alabama Crime Victims Compensation Fund. This appeal follows.
 

 The State’s evidence tended to show the following. Jimmy Abernathy testified that he lived approximately one-half mile from Mildred and Alfred Johnson, the defendant’s grandparents. On the morning of December 9, 2009, Abernathy discovered that his Kawasaki-brand mule was missing from beneath a lean-to on the back of his garage, and that a go-cart had been moved from beneath the lean-to and was in front of his garage. Abernathy said that his brother, Paul Abernathy, learned of the theft, and he drove around in the area to look for the mule. Abernathy’s brother soon found the mule and telephoned Abernathy, and Abernathy went to the location where the mule had been abandoned. When Abernathy’s brother arrived, one man was on the mule and another was on a four-wheeler; the two men fled on the four-wheeler, leaving the mule. Abernathy said he and his brother recovered the mule within 20 minutes of discovering that it had been stolen. Finally, Abernathy testified that the mule had been empty when it was stolen, but when it was recovered it held a generator, a bag, and some stereo speakers, none of which belonged to Abernathy. On cross-examination, Abernathy testified that he did not see Johnson on his property, nor did he see Johnson driving the mule.
 

 Adam McCormick testified that on the morning of December 9, 2009, he discovered that his Polaris brand four-wheeler had been stolen from his garage. McCormick stated that he had added special tires, wheels, exhaust, and a winch to the four-wheeler, and a mount for a Global-Positioning System (“GPS”) device. He reported the theft to the sheriffs department on December 9, and investigators contacted him on December 10, when they recovered it. McCormick testified that the investigators verified that the vehicle-identification number on the recovered four-wheeler was the number McCormick had given them to identify his property. He said that the ignition switch had been broken out of the four-wheeler and that the GPS mount had been taken from the gas tank where he had mounted it. McCormick also said the four-wheeler was covered in mud. McCormick said that a bag and a set of speakers had been stolen from his garage, and he identified the bag and stereo speakers recovered from Abernathy’s mule as the stolen items. McCormick testified that a window in the garage
 
 *779
 
 was open on the day he discovered the theft, and that the window had been closed when he last saw his four-wheeler in the garage. McCormick testified that he did not see Johnson on his property or riding his four-wheeler.
 

 Paul Abernathy, Jimmy’s brother, stated that on the morning of December 9, 2009, after his brother discovered that his mule had been stolen, Paul drove around in the area and looked for it. Paul stated that he saw Mitchell Terry driving the mule on a gravel road, and he then saw Johnson on a four-wheeler in front of Terry. Paul examined a photograph of McCormick’s four-wheeler and he stated that it looked identical to the one Johnson was riding that day. He said that he was familiar with Johnson and that he knew him because they lived in the same community. He said he knew who Mitchell was because he had seen him in the community also. By the time Paul turned his vehicle around to go back to the location where he had seen the men, he noticed that the engine on the mule had stopped running. Paul asked Terry where he had gotten the mule, and Terry told him that they had borrowed it from a friend two or three days earlier. Paul told Terry that the mule looked like the one stolen from his brother the night before; Paul testified that he knew the mule was his brother’s because he recognized the key chain hanging from the ignition. Johnson then came up to where Paul and Terry were standing, and Terry told Johnson what Paul had said. Paul testified that Johnson and Terry “were both still trying to play it off that they borrowed [the mule] from somebody else.” (R. 96.) When Paul turned to go to his truck to telephone his brother and tell him he had found the mule, Terry got on the four-wheeler with Johnson, and Johnson drove rapidly away from the scene. On cross-examination, Paul testified that he did not see Johnson driving the mule.
 

 James Bradley Potts, an investigator with the Lauderdale County Sheriffs Department, testified that on the morning of December 9, 2009, he received information about the thefts of a four-wheeler and a mule. When a deputy informed him that the mule had been recovered and returned to Abernathy, Potts went to Abernathy’s residence and spoke with him. He recovered from the bed of the mule a bag and speakers that belonged to McCormick; he recovered several other items from the bed of the mule but was unable to determine who owned them.
 

 Potts testified that Johnson and Terry were suspects in the crimes and that law-enforcement officers discovered Johnson’s vehicle at Terry’s mother’s house. Terry’s mother permitted officers to search the house, and both men were found hiding inside that residence.
 

 Charles Brian Pigg testified that Johnson is his stepbrother. He stated that he was staying with his mother on December 9, 2009, and Johnson knocked on the door that morning. When Pigg opened the door, he did not see a car or other vehicle outside. He said that Terry came to the house riding a four-wheeler that, he said, looked like the photograph of McCormick’s four-wheeler he was shown at trial. Pigg told Terry that the four-wheeler was nice and asked where he had gotten it. Terry told Pigg that his mother had purchased the four-wheeler for him. Pigg testified that Johnson left with Terry on the four-wheeler.
 

 Lowery Davis testified that he was employed by the Lauderdale County Sheriffs Office but was assigned to duties with the United State’s Marshal’s Office to pursue fugitives and people with felony warrants. Davis testified that on December 10 or 11, 2009, Investigator Potts told him that he was looking for Terry and Johnson, and
 
 *780
 
 Davis said that he located Johnson’s vehicle behind Terry’s mother’s house. During a search of the house, officers found Terry hiding beneath a coffee table and Johnson hiding behind a Christmas tree; both were taken into custody, Davis said.
 

 I.
 

 Johnson argues that his convictions for first-degree theft of property cannot stand because, he says, the State failed to prove the elements of that crime. Specifically, he argues, as he did when he made his motions for a judgment of acquittal at trial, that § 13A-8-3, Ala.Code 1975, requires proof of theft of property with a value in excess of $2,500 or the theft of a motor vehicle of any value and that the State failed to prove either the value of the four-wheeler or the Kawasaki mule, or that the four-wheeler and the Kawasaki brand mule were “motor vehicles” as that term is defined for purposes of the theft statute. Johnson further argues:
 

 “A ‘motor vehicle’ is defined by the Mandatory Liability Insurance Act as ‘Every vehicle that
 
 is designed and manufactured to be operated on the streets and highways of Alabama,
 
 but not operated upon rails.[’] ALA. CODE § 32-7A-2 (1975)
 
 (emphasis
 
 added)[.] According to ALA. CODE § 32-8-2, the Alabama Uniform Certificate of Title and Anti-theft Act states that the term ‘motor vehicle’ includes ‘every automobile, motorcycle, mobile trailer, semitrailer, truck, truck tractor, trailer, and other device that is self-propelled or drawn, in, upon, or by which any person or property
 
 is or may be transported or drawn upon a public highway.’ (emphasis add
 
 ed)[.] Also, according to ALA. CODE § 8-20A-1 (1975), Title 8 of Commercial Law and Consumer Protection defines a motor vehicle as a ‘vehicle intended
 
 primarily
 
 for use and operation on the public highways.’
 
 (emphasis
 
 added)[.]”
 

 (Johnson’s brief, at p. 18.)
 

 Johnson concludes that, because neither of the “vehicles” stolen here could be licensed or driven on roadways, neither could truly be considered to be a motor vehicle as defined by the theft statute.
 

 The State contends that the language of the theft statute is clear, so there is no need to resort to analysis of other statutes — as Johnson suggests — and it contends that this Court needs to engage in judicial construction of the statute. The State argues that the plain words of the statute, defining first-degree theft as the taking of a motor vehicle no matter its value, include utility vehicles such as the four-wheeler and the mule in this case. We agree with the State.
 

 First, we construe Johnson’s argument to be a challenge to the trial court’s ruling on the motions for a judgment of acquittal and a challenge to the sufficiency of the State’s evidence. The oft-stated principles governing the review of a challenge to the sufficiency of the evidence are:
 

 “ ‘In determining the sufficiency of the evidence to sustain a conviction, a reviewing court must accept as true all evidence introduced by the State, accord the State all legitimate inferences therefrom, and consider all evidence in a light most favorable to the prosecution.
 
 Faircloth v. State,
 
 471 So.2d 485 (Ala.Crim.App.1984), aff'
 
 d,
 
 471 So.2d 493 (Ala.1985).’
 
 Powe v. State,
 
 597 So.2d 721, 724 (Ala.1991). It is not the function of this Court to decide whether the evidence is believable beyond a reasonable doubt,
 
 Pennington v. State,
 
 421 So.2d 1361 (Ala.Crim.App.1982); rather, the function of this Court is to determine whether there is legal evidence from which a rational finder of fact could
 
 *781
 
 have, by fair inference, found the defendant guilty beyond a reasonable doubt.
 
 Davis v. State,
 
 598 So.2d 1054 (Ala.Crim.App.1992). Thus, ‘[t]he role of appellate courts is not to say what the facts are. [Their role] is to judge whether the evidence is legally sufficient to allow submission of an issue for decision [by] the jury.’
 
 Ex parte Bankston,
 
 858 So.2d 1040, 1042 (Ala.1978) (emphasis original).”
 

 Ex parte Tiller,
 
 796 So.2d 310, 312 (Ala.2001) (quoting
 
 Ex parte Woodall,
 
 730 So.2d 652, 658 (Ala.1998)).
 

 Although Johnson argues that reference to statutes outside of the Alabama Criminal Code is necessary to resolve this issue, we disagree. It is an established principle of statutory construction that words in a statute must be given their plain, natural, and commonly understood meaning, and courts are to determine and give effect to the legislature’s intent based on the clear meaning of the language in the statute.
 
 E.g., State v. Adams,
 
 [Ms. CR-08-1728, Nov. 5, 2010] — So.3d -(Ala.Crim.App.2010). Only if there is no rational way to interpret the words of the statute do we look beyond those words and engage in judicial construction.
 

 The term “motor vehicle” is not defined in the Alabama Criminal Code.
 
 Merriam-Webster’s Collegiate Dictionary
 
 811 (11th ed.2003) defines “motor vehicle” as “an automotive vehicle not operated on rails.” “Automotive” is defined as “of, related to, or concerned with self-propelled vehicles or machines.”
 
 Id.
 
 at 84. The trial court applied the clear and plain meaning of the statute at trial, in response to Johnson’s argument that items stolen in this case were not motor vehicles; the court stated: “A four wheeler is a vehicle. It’s motorized. It’s a motor vehicle.” (R. 174.) When Johnson sought clarification of the court’s ruling, the court then said: “A four wheeler with a motor and four wheels that’s driven around is a motor vehicle, yes, sir.” (R. 174-75.) The plain, ordinary, and commonly understood meaning of the term “motor vehicle” includes a four-wheeler and a mule, both of which are self-propelled machines. Because the language is plain and unambiguous, it is not necessary to judicially construe the statute as Johnson requests.
 

 The trial court correctly denied the motions for a judgment of acquittal and submitted the theft charges to the jury. Johnson is not entitled to any relief on this claim of error.
 

 II.
 

 Johnson next argues that his convictions should be reversed because the State presented no evidence establishing that he entered a dwelling, intended to take any property, or that he took any property, and that his convictions for theft and burglary must be set aside. We construe Johnson’s arguments to be challenges to the sufficiency of the State’s evidence, and we apply the principles set out in the previous section of this opinion.
 

 First, to the extent Johnson argues that the State failed to prove a prima facie case of theft because the mule and the four-wheeler are not motor vehicles and because the State did not prove that the stolen items each had a value in excess of $2,500, we considered that argument in the section above, and we resolved the issue adversely to Johnson. To the extent Johnson now argues that no witnesses testified that Johnson took any property, this claim was not presented in the trial court in the motions for a judgment of acquittal. When a defendant makes a motion for a judgment of acquittal and raises specific grounds, he waives all other grounds not specified.
 
 E.g., Johnson v. State,
 
 994
 
 *782
 
 So.2d 950 (Ala.Crim.App.2007). Therefore, that portion of Johnson’s claim was not preserved for review.
 

 Second, although the State argues that Johnson did not preserve for review any challenge to the sufficiency of the evidence as to the burglary charge because he did not mention the burglary charge in his motions for a judgment of acquittal, the record reveals otherwise. (R. 129-30.) The issue was preserved for appellate review.
 

 Finally, we reject Johnson’s argument as to the burglary conviction and hold that the trial court did not err when it denied the motions for a judgment of acquittal.
 

 “A person commits the crime of burglary in the third degree if he knowingly enters or remains unlawfully in a building with intent to commit a crime therein.” § 18A-7-7, Alabama Code 1975.
 

 “The crime of burglary may be proved by circumstantial evidence where such circumstantial evidence presents a jury question.
 
 Wallace v. State,
 
 52 Ala.App. 331, 292 So.2d 140 (Ala.Crim.App.1974). The corpus delicti is a fact, proof of which may be shown by circumstantial evidence, and, if there is a reasonable inference to prove its existence, the Court should submit to the jury for consideration the question of the sufficiency and weight of the evidence tending to support that inference.
 
 Godfrey v. State,
 
 333 So.2d 182 (Ala.Crim.App.1976);
 
 Burlison v. State,
 
 369 So.2d 844 (Ala.Crim.App.1979).”
 

 McConnell v. State,
 
 429 So.2d 662, 665 (Ala.Crim.App.1983).
 

 “ ‘Upon proof of a burglary, the possession soon thereafter of goods recently taken in a burglary affords a logical inference in the absence of a satisfactory explanation that the possessor was the burglar.’
 
 Trammell v. State,
 
 377 So.2d 12 (1979). It is also well founded in this state that, when a breaking and entering is shown by the evidence and it appears that, at the time of the breaking, certain property was stolen, which is later found in the possession of the defendant, this, if unexplained to the satisfaction of the jury, would be sufficient to support a judgment of guilt.
 
 Pugh v. State,
 
 376 So.2d 1135 (Ala.Crim.App.), writ denied,
 
 Ex parte Pugh,
 
 376 So.2d 1145 (Ala.1979);
 
 McConnell v. State,
 
 429 So.2d 662 (Ala.Crim.App.1983);
 
 Moon v. State,
 
 [460 So.2d 287 (Ala.Crim.App.1984)].
 

 “In this cause, the defense attempted to establish an alibi by placing the appellant in Florida. This presents a question for the jury which was resolved against Marlow. It is true that no one saw Marlow on the premises on the date of the burglary. No fingerprints were found.
 

 “However, sufficient evidence was placed before the jury to sustain Mar-low’s conviction. Thus, the trial court’s denial of the appellant’s motion for judgment of acquittal and for a motion for new trial was not in error.”
 

 Marlow v. State,
 
 538 So.2d 804, 810-11 (Ala.Crim.App.1988).
 

 The State in this case presented evidence showing that McCormick discovered his four-wheeler was missing from his garage and that a window to the garage that had been closed when McCormick was last in the garage had been opened, allowing the person or persons responsible for taking the four-wheeler to gain entry into the garage. On the same morning McCormick discovered that his vehicle had been stolen, Paul Abernathy saw Johnson riding a four-wheeler, and after Paul questioned Terry about the mule Terry had been riding Terry got on the four-wheeler and he and Johnson sped away from the location.
 
 *783
 
 Furthermore, when law-enforcement officers later searched a residence for Johnson and Mitchell, Johnson was found hiding behind a Christmas tree. As it did in
 
 Marlow,
 
 the State presented sufficient evidence to sustain the conviction for third-degree burglary. Johnson presented an alibi — that he was with his girlfriend that day — and he implied that Terry had stolen the four-wheeler. The defense theory of the case presented a question for the jury, and the trial court properly allowed the case to proceed to the jury for its resolution of the conflicting evidence. Thus, even though the evidence was weak, we hold that the State presented sufficient evidence, when viewed in the light most favorable to the State, from which the jury might have reasonably found Johnson guilty beyond a reasonable doubt.
 

 The trial court did not err when it denied the motions for a judgment of acquittal, and Johnson is not entitled to relief on this claim of error.
 

 For all the foregoing reasons, the judgment of the circuit court is due to be affirmed.
 

 AFFIRMED.
 

 WINDOM, KELLUM, BURKE, and JOINER, JJ., concur.